MORGAN, LEWIS & BOCKIUS LLP
Daryl S. Landy (SBN 136288)
daryl.landy@morganlewis.com
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626
Tel:    714.830.0600
Fax:    714.830.0700

MORGAN, LEWIS & BOCKIUS LLP
Anna Kim (SBN 292082)
anna.kim@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:    213.612.2500
Fax:    213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Brendan T. Killeen (admitted *pro hac vice*)
brendan.killeen@morganlewis.com
101 Park Avenue
New York, New York 10178
Telephone: 212-309-6000
Facsimile:  212-309-6001

Attorneys for Defendant
JETBLUE AIRWAYS CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Booher and Patricia Reid, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>JetBlue Airways Corporation,<br><br>Defendant. | Case No. 4:15-cv-01203-JSW<br><br>**DEFENDANT JETBLUE AIRWAYS CORPORATION'S NOTICE OF CROSS-MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' PARTIAL CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        May 19, 2017<br>Time:        9:00 a.m.<br>Courtroom:    5, 2nd Floor<br>Judge:        Hon. Jeffrey S. White |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JETBLUE'S NOTICE OF CROSS-MOTION
FOR SUMMARY JUDGMENT
CASE NO. 4:15-CV-01203-JSW

**PLEASE TAKE NOTICE** that on May 19, 2017, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Defendant JetBlue Airways Corporation ("JetBlue") will, and hereby does, move this Court for an order granting summary judgment in its favor and against Plaintiffs Christopher Booher ("Booher") and Patricia Reid ("Reid") (collectively, "Plaintiffs").  Pursuant to Federal Rule of Civil Procedure 56, JetBlue moves for summary judgment on all of Plaintiffs' remaining claims:  Plaintiffs' Second Claim for Relief for failure to pay overtime wages in violation of California Labor Code §§ 510 and 1194 and California Wage Order No. 9, Third Claim for Relief for waiting time penalties under California Labor Code § 203, Fourth Claim for Relief for wage statement penalties under California Labor Code § 226, Fifth Claim for Relief for civil penalties under the California Labor Code Private Attorneys' General Act, and Sixth Claim for Relief for violation of California's unfair competition law.

This Motion is based upon the accompanying Memorandum of Points and Authorities, the Supporting Declarations of Julia Garcia, Imran Rahman, Valentin Estevez, and Brendan Killeen, the concurrently-filed Request for Judicial Notice, and all of the exhibits attached thereto respectively, the pleadings and the Court's record on file herein, and on such other and further argument and evidence as may be presented at or prior to the time of the hearing, and all matters on which this Court may properly take notice.

Dated:  March 17, 2017                           MORGAN, LEWIS & BOCKIUS LLP


                                                 By  */s/ Daryl S. Landy*
                                                     Daryl S. Landy
                                                     Brendan T. Killeen
                                                     Anna Kim
                                                     Attorneys for Defendant
                                                     JETBLUE AIRWAYS CORPORATION

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

JETBLUE'S NOTICE OF CROSS-MOTION
FOR SUMMARY JUDGMENT
CASE NO. 4:15-CV-01203-JSW

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF UNDISPUTED FACTS ........................................................ 2

        A.     JetBlue's Operations ............................................................................... 2

        B.     JetBlue's Flight Attendants ..................................................................... 3

        C.     Plaintiffs' Flight History ......................................................................... 5

               1.     Reid ............................................................................................... 5

               2.     Booher .......................................................................................... 5

        D.     Flight Attendant Compensation .............................................................. 6

        E.     Plaintiffs' Pay Information And Wage Statements ................................. 7

III.    JETBLUE IS ENTITLED TO SUMMARY JUDGMENT ON THE REMAINING
        CLAIMS AS A MATTER OF LAW .................................................................. 7

        A.     The California Labor Code Does Not Apply To Plaintiffs Because They
               Principally Worked Outside of California During the Relevant Time
               Periods. .................................................................................................... 7

               1.     Section 226 Does Not Apply To Reid Because She Principally
                      Worked Outside Of California During The Relevant Time Period. .......... 9

               2.     California's Overtime Law Does Not Apply To Plaintiffs Because
                      They Principally Worked Outside Of California On The Identified
                      Days. ........................................................................................... 14

        B.     Requiring JetBlue to Comply with California's Wage Statement and
               Overtime Laws Would Violate the Dormant Commerce Clause. ........................ 15

               1.     California May Not Project Its Wage Statement Laws Into Every
                      Other State In Which Plaintiffs Worked. .................................... 15

               2.     Applying The California Labor Code's Daily Overtime
                      Requirements To Flight Attendants Places An Undue Burden On
                      JetBlue. ....................................................................................... 19

        C.     JetBlue's Wage Statements Accurately Reflected JetBlue's California-
               Compliant Compensation System. ......................................................... 21

        D.     Plaintiffs Have Not Established That They Were Eligible For Daily
               Overtime On Any Of The Identified 32 Days. ....................................... 22

        E.     Plaintiffs' Waiting Time Penalties, Unfair Competition Law and PAGA
               Claims Lack Merit .................................................................................. 25

IV.     CONCLUSION ................................................................................................. 25

i

JETBLUE'S NOTICE OF CROSS-MOTION
FOR SUMMARY JUDGMENT
CASE NO. 4:15-CV-01203-JSW

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Aguilar v. Zep Inc.*
   2014 WL 4245988 (N.D. Cal. Aug. 27, 2014)...........................................................................9

*Anderson v. Mt. Clemens Pottery Co.*
   328 U.S. 680 (1946)..............................................................................................................12, 24

*Atl. Coast Line R. Co. v. Mazursky*
   216 U.S. 122 (1910)...................................................................................................................16

*Barclays Bank PLC v. Franchise Tax Bd. Of California*
   512 U.S. 298 (1994)...................................................................................................................16

*Bernstein v. Virgin America, Inc.*
   2017 WL 57307 (N.D. Cal. Jan. 5, 2017) ............................................................12, 13, 16, 19

*Bibb v. Navajo Freight Lines*
   359 U.S. 520 (1959)...................................................................................................................21

*Booher v. JetBlue Airways Corp.*
   2016 WL 1642929 (N.D. Cal. Apr. 26, 2016) ..............................................................6, 20, 21

*Brock v. Seto*
   790 F.2d 1446 (9th Cir. 1986)...................................................................................................24

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*
   476 U.S. 573 (1986)..............................................................................................................18, 19

*Burlington N.R. Co. v. Dep't of Pub. Serv. Regulation*
   763 F.2d 1106 (9th Cir. 1985)...................................................................................................16

*Hirst v. SkyWest Airlines, Inc.*
   2016 WL 2986978 (N.D. Ill. May 24, 2016) ..................................................8, 14, 16, 17, 20

*Huron Portland Cement Co. v. City of Detroit, Mich.*
   362 U.S. 440 (1960)...................................................................................................................16

*Int'l Franchise Ass'n, Inc. v. City of Seattle*
   803 F.3d 389 (9th Cir. 2015).....................................................................................................16

*Lloyd A. Fry Roofing Co. v. Wood*
   344 U.S. 157 (1952)...................................................................................................................16

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

JETBLUE'S NOTICE OF CROSS-MOTION
FOR SUMMARY JUDGMENT
CASE NO. 4:15-CV-01203-JSW

*Mersnick v. USProtect Corp.*
   2006 WL 3734396 (N.D. Cal. Dec. 18, 2006) ..........................................................23

*Montalvo v. Spirit Airlines*
   508 F.3d 464 (9th Cir. 2007)...............................................................................16

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
   682 F.3d 1144 (9th Cir. 2012)...........................................................................16

*Oil, Chemical and Atomic Workers Int'l Union v. Mobil Oil Corp.*
   426 U.S. 407 (1976) ..............................................................................................8

*Oman v. Delta Air Lines, Inc.*
   2016 WL 66838 (N.D. Cal. Jan. 6, 2017) ...................................................... passim

*Pac. Merch. Shipping Ass'n v. Goldstene*
   639 F.3d 1154 (9th Cir. 2011).............................................................................16

*Pac. Nw. Venison Producers v. Smitch*
   20 F.3d 1008 (9th Cir. 1994)...............................................................................16

*Pharm. Research & Man. Of America v. Cty. Of Alameda*
   768 F.3d 1037 (9th Cir. 2014).............................................................................16

*Pike v. Bruce Church, Inc.*
   397 U.S. 137 (1970) ...............................................................................15, 19, 21

*Rocky Mountain Farmers Union v. Corey*
   703 F.3d 1070 (9th Cir. 2013).............................................................................16

*Sam Francis Found. v. Christies, Inc.*
   784 F.3d 1320 (9th Cir. 2015).............................................................................15

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*
   633 F. Supp. 2d 883 (C.D. Cal. 2009)....................................................................9

*Shook v. Indian River Transport Co.*
   2017 WL 633895 (E.D. Cal. Feb. 15, 2017)..................................................9, 10, 13

*Sullivan v. Oracle Corp.*
   662 F.3d 1265 (9th Cir. 2011)...................................................................11, 16, 19

*Vidrio v. United Airlines, Inc.*
   No. 15-cv-07985-PSG-MPW, Dkt. No. 47 (C.D. Cal. Mar. 15, 2017)........................... passim

*Ward v. United Airlines, Inc.*
   2016 WL 3906077 (N.D. Cal. July 19, 2016)................................................... passim

*White v. Starbucks Corp.*
   497 F. Supp. 2d 1080 (2007)................................................................................25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

JETBLUE'S NOTICE OF CROSS-MOTION
FOR SUMMARY JUDGMENT
CASE NO. 4:15-CV-01203-JSW

*Wright v. Adventures Rolling Cross Country, Inc.*
   2012 U.S. Dist. LEXIS 104378 (N.D. Cal. May 3, 2012) ........................................13

**CALIFORNIA CASES**

*Amaral v. Cintas Corp. No. 2*
   163 Cal. App. 4th 1157 (2008)..................................................................................24

*Hernandez v. Mendoza*
   199 Cal. App. 3d 721 (1988)....................................................................................24

*North Alaska Salmon Co. v. Pillsbury*
   174 Cal. 1 (1916) ....................................................................................................13

*Sullivan v. Oracle Corp.*
   51 Cal. 4th 1191 (2011) ..................................................................................... passim

*Taylor v. Lockheed Martin Corp.*
   78 Cal. App. 4th 472 (2000)....................................................................................23

*United Air Lines, Inc. v. Indus. Welfare Comm'n*
   211 Cal. App. 2d 729 (1963)......................................................................15, 17, 18

**FEDERAL STATUTES**

49 U.S.C. § 40103(a) .................................................................................1, 8, 14, 20

**CALIFORNIA STATUTES**

California Business & Professions Code § 17200. ........................................................25
California Code of Civil Procedure § 340(a) ...........................................................5, 9
California Labor Code § 203.........................................................................................25
California Labor Code § 226.................................................................................. passim
California Labor Code § 245.5(a)(4) ...........................................................................14
California Labor Code § 510.......................................................................11, 14, 15, 17

**OTHER STATUTES**

8 Alaska Administrative Code § 15.160 ......................................................................19
Hawaii Revised Statutes § 387-6 ................................................................................19
Texas Labor Code § 62.003(b) ....................................................................................19

**LEGISLATIVE HISTORY**

Assem. Labor Com. Analysis of AB 3731 (1976).................................................1, 19
Sen. Lab. & Ind. Rel. Committee, Senate Floor Analysis for AB 2535
   (June 29, 2016)......................................................................................................14
S. Rept. 1811, 85th Cong., 2d Sess. (1958) ..................................................14, 16, 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

JETBLUE'S NOTICE OF CROSS-MOTION
FOR SUMMARY JUDGMENT
CASE NO. 4:15-CV-01203-JSW

## SUMMARY OF ARGUMENT PURSUANT TO CIVIL STANDING ORDER ¶ 7

Plaintiffs Christopher Booher and Patricia Reid (collectively, "Plaintiffs") claim that Defendant JetBlue Airways Corporation ("JetBlue") violated California Labor Code section 226 ("Section 226") by failing to provide Plaintiffs with a California-compliant wage statement for every pay period in which they performed work in California.  Just as Judge Orrick recently found, this Court should grant JetBlue's summary judgment motion and deny Plaintiffs' Section 226 claim because there is no basis to apply Section 226's procedural protections to Flight Attendants ("FAs").  *See Oman v. Delta Air Lines, Inc.*, 2016 WL 66838, at *6 (N.D. Cal. Jan. 6, 2017); *see also Vidrio v. United Airlines, Inc.*, No. 15-cv-07985-PSG-MPW, Dkt. No. 47 (C.D. Cal. Mar. 15, 2017); *Ward v. United Airlines, Inc.*, 2016 WL 3906077, at *5 (N.D. Cal. July 19, 2016).  First, neither Plaintiffs nor JetBlue have the necessary connections to California to justify Section 226's extraterritorial application.  Second, applying Section 226 to FAs would impermissibly require JetBlue to adhere to California law nationwide and impose an undue burden thereby violating the Dormant Commerce Clause.  Third, JetBlue's wage statements accurately reflected the manner in which it compensated Plaintiffs in accordance with its FA compensation system that this Court previously held fully complies with California law.  *Booher v. JetBlue Airways Corp.*, 2016 WL 1642929 (N.D. Cal. Apr. 26, 2016).

Plaintiffs' daily overtime claim also should be dismissed.  Plaintiffs' job required them to spend the majority of their working hours in the federal airspace, which falls under the U.S. Government's exclusive sovereignty (49 U.S.C. § 40103(a)), including on each of the days they allegedly worked more than eight hours "in" California.  Plaintiffs cannot overcome the presumption against extraterritorial application of the law to be eligible for daily overtime.  Otherwise, California's overtime law would impose an undue burden on JetBlue's operations that also implicates the Dormant Commerce Clause.  Moreover, Plaintiffs still have failed to meet their burden of proof that they worked more than eight hours a day in California; therefore, at a minimum, Plaintiffs' summary judgment motion should be denied.

Accordingly, JetBlue respectfully requests that Plaintiffs' Second and Third Claims for Relief and derivative Fourth, Fifth and Sixth Claims for Relief be dismissed as a matter of law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

JETBLUE'S NOTICE OF CROSS-MOTION
FOR SUMMARY JUDGMENT
CASE NO. 4:15-CV-01203-JSW

1    I.    **INTRODUCTION**

2          Relying on the same meritless arguments Delta Flight Attendants ("FAs") recently

3    asserted in *Oman v. Delta Air Lines, Inc.*, Plaintiffs Christopher Booher and Patricia Reid

4    ("Plaintiffs") claim that Defendant JetBlue Airways Corporation ("JetBlue") violated California

5    Labor Code section 226 ("Section 226") by failing to provide Plaintiffs with a California-

6    compliant wage statement for every pay period in which they performed any work in California,

7    regardless of how much time they spent working in California or how that time compared to their

8    hours worked outside of California.  Just as Judge Orrick did in *Oman* and Judge Gutierrez did

9    this week in *Vidrio v. United Airlines, Inc.*, this Court should deny Plaintiffs' claim and grant

10   JetBlue's summary judgment motion because Plaintiffs did not principally work in California and

11   because the nature of their work required them to work in the federal airspace, as well as in

12   multiple other jurisdictions, during each pay period.  Moreover, the undisputed evidence shows

13   that JetBlue is not a California-based employer and does not have "deep ties" to California.

14   Accordingly, because neither Plaintiffs nor JetBlue have the necessary connections warranting the

15   expansive, extraterritorial application of Section 226 for which Plaintiffs advocate, this Court

16   should not apply the Section 226 requirements to JetBlue for its FAs, including Plaintiffs.

17         Applying Section 226 to transient employees such as Plaintiffs also would violate the

18   Dormant Commerce Clause.  Any application of Plaintiffs' theories would impermissibly require

19   JetBlue to adhere to California law nationwide and/or permit individual states to regulate

20   JetBlue's wage and hour practices governing this mobile FA workforce in a manner that imposes

21   an undue burden that vastly outweighs any interest California has in ensuring that JetBlue

22   employees who do not principally work in California are "adequately informed of compensation

23   received."  Assem. Labor Com. Analysis of AB 3731 (1976).

24         Plaintiffs' claims for daily overtime are equally unavailing.  Plaintiffs' primary duties

25   included attending to passenger safety and providing customer service while flying, and their job

26   required them to spend the majority of their working hours in the federal airspace.  That airspace,

27   including above California, falls under the U.S. Government's exclusive sovereignty.  49 U.S.C.

28   § 40103(a).  Each day Plaintiffs allegedly worked more than eight hours "in" California included

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMO P'S & A'S ISO JETBLUE'S MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1  several hours worked within this federal airspace.  As a result, Plaintiffs were eligible for

2  overtime only if they can overcome the presumption against extraterritorial application of

3  California law, which they cannot.  Otherwise, JetBlue would need to monitor the exact time and

4  location of each FA's individual flights in real-time to determine which state's overtime laws

5  apply and how, creating an undue burden that also implicates the Dormant Commerce Clause.

6      Even if Plaintiffs' time spent working in the federal airspace above California were

7  considered time working within California, Plaintiffs still have failed to meet their burden of

8  proof.  The days Plaintiffs identify as being overtime-eligible include Duty Periods (a) containing

9  lengthy Turns and/or "deadhead" flights during which Plaintiffs admittedly were not working,

10 and/or (b) for which Plaintiffs were credited at their Premium Pay Rate.  Moreover, JetBlue's

11 records and testimony confirm that certain intra-California flights operated in airspace not above

12 California, thereby further refuting the amount of daily hours in California that Plaintiffs allege.

13     Accordingly, Plaintiffs' Second, Third, Fourth, Fifth and Sixth Claims for Relief should

14 be dismissed as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 56.[1]

15 **II.   STATEMENT OF UNDISPUTED FACTS**

16     **A.   JetBlue's Operations**

17     JetBlue provides air transportation services through a route network currently serving 100

18 "BlueCities" located in 29 states, the District of Colombia, Puerto Rico, the U.S. Virgin Islands,

19 and 21 countries.  Declaration of Imran Rahman ("Rahman Decl."), ¶ 2.  In 2016, JetBlue

20 operated an average of 932 daily flights, of which only 68 (7.3%) departed from and/or landed at

21 a California-based airport.  *Id.*, ¶ 8.  JetBlue's route network takes its customers and employees

22 through federal airspace above the continental U.S., Alaska, and U.S. territories, and federal

23 enclaves, as well as over foreign nations and international waters.  *Id.*, ¶¶ 3, 5-6.

24     JetBlue is incorporated in Delaware and since 1998 has maintained its headquarters in

25 New York.  Declaration of Brendan Killeen ("Killeen Decl."), Ex. F at 1; Declaration of Julia

---

[1] Plaintiffs' Labor Code "waiting time" penalty, Labor Code Private Attorneys' General Act
("PAGA"), and statutory unfair competition claims are derived from Plaintiffs' underlying wage
statement and overtime claims.  Because the wage statement and overtime claims fail, so too
should the derivative claims.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   Garcia ("Garcia Decl."), ¶ 2.  JetBlue's Dispatch, Crew Scheduling, Crew Services, Inflight

2   Standards,[2] Payroll, Compensation, Human Resources, and Legal departments all are located in

3   New York.  Garcia Decl., ¶ 3; Rahman 13:12-24;[3] Garcia 30(b)(6) 68:11-13.  Moreover, JetBlue

4   created, issued, modified, updated and applied its policies and procedures, including all policies

5   and procedures regarding FA pay, from its New York headquarters.  Garcia Decl., ¶ 4.

6        JetBlue's FAs receive an average of four weeks of initial training at JetBlue's Orlando

7   Support Center in Florida.  *Id.*, ¶ 6.  The Federal Aviation Administration ("FAA") also requires

8   that FAs attend annual (or recurrent) training to remain eligible to work as a FA.  *Id.*, ¶ 7.

9   JetBlue's FAs typically attend one or two days of recurrent training annually at JetBlue's Orlando

10  Support Center, though, at times JetBlue has held recurrent training in other locations.  *Id.*

11       **B.    <u>JetBlue's Flight Attendants</u>**

12       JetBlue currently employs approximately 4,598 FAs based in the United States, of which

13  approximately 191 (4.2%) are based in California, with all of them based out of LGB.  *Id.*, ¶ 5.

14       Plaintiffs received every month they worked for JetBlue an information packet that

15  provided a listing of all available flight Pairings[4] that were scheduled to depart from their base the

16  following month (the "Bid Packet").  Booher 118:12-20; Reid 133:9-134:2.  The information

17  JetBlue provided in the Bid Packet allowed Plaintiffs to see the credit valuation for the Pairing

18  and determine the compensation formula that would apply to the Pairing as scheduled, with the

19  _____

20  [2] The Inflight Standards department produces the FA Manual and Inflight Standards Manual, which has set forth the rules, policies and scheduled procedures for FAs, including the policies

21  regarding compensation.  Garcia 30(b)(6) Dep. 68:11-13; Booher 87:8-23; Reid 69:17-70:3.

    [3] All cited portions of Booher, Reid, and Imran Rahman ("Rahman")'s deposition transcripts are

22  to Exhibits (Exs.) A, B, and D, respectively, attached to the Killeen Declaration, and reference the deponent's last name and the applicable page and line number(s).  All cited portions of Julia

23  Garcia ("Garcia")'s Rule 30(b)(6) and individual deposition transcripts are to Exs. C and E, respectively, attached to the Killeen Declaration, and reference either "Garcia 30(b)(6)" or

24  "Garcia Ind.," respectively, and the applicable page and line number(s).

    [4] A "Pairing" is a pre-planned sequence of flights that may consist of one or more flight segments

25  (*i.e.*, a single flight) or one or more "Duty Periods."  Booher 117:4-17; Garcia 30(b)(6) 24:4-9,

26  24:16-19.  A "Duty Period" begins at the scheduled Report Time and ends upon the FA's release from duty for that particular day or Pairing.  Garcia 30(b)(6) 24:10-15; Booher 134:18-135:10.

27  An FA's Pairing may also include one or more "deadhead" trips, which is when a FA travels by plane as a passenger, rather than as Crew, for an assignment beginning at another location.

28  Killeen Decl., Ex. G, § E.6.  FAs are not working when they deadhead.  Garcia Ind. 97:22-98:5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   times provided serving as a minimum credit guarantee.  Booher 199:5-10.  Plaintiffs then

2   submitted their bid preferences from which JetBlue generated their monthly schedule.  Booher

3   153:21-154:15; 194:16-195:20; Reid 79:20-24.  Plaintiffs also could change their monthly

4   schedule after initially setting it, including swapping Pairings with other FAs or adding available

5   Pairings.  Booher 202:7-20, 203:21-204:1; Reid 145:10-14, 146:1-18.  Unlike employees who

6   work the same schedule from week-to-week with standard start and end times for their shifts,

7   Plaintiffs' schedules typically varied.  Garcia Decl., ¶ 9.

8          Plaintiffs' primary job duties were to ensure passenger safety, protect the aircraft, and

9   provide customer service *while inflight*.  Booher 246:15-18, 248:8-17.  Plaintiffs began a Pairing

10  by reporting to the airport at a designated Report Time.  Garcia 30(b)(6) 34:17-35:7; Killeen

11  Decl., Ex. G, § B.4.  That Report Time typically was one hour before the first flight's scheduled

12  departure time at the start of the Duty Period.  Garcia 30(b)(6) 35:11-14; Reid 64:18:21; Killeen

13  Decl., Ex. G, § B.3.  Plaintiffs reported to the departure gate before passenger boarding.  Garcia

14  30(b)(6) 42:6-15, 43:19-23; Reid 186:11-13.  The Crew then ensured the aircraft cabin was ready

15  to receive passengers before assisting with the boarding process, which typically began 35

16  minutes before the scheduled departure.  Garcia 30(b)(6) 44:8-45:5; Reid 191:25-192:18.  After

17  the passengers boarded and the Pilot received clearance, the plane pushed back from the gate

18  (referred to as "Block Out").  Garcia 30(b)(6) 28:18-21.

19         When the aircraft set its brakes at the gate upon arrival ("Block In"), Plaintiffs assisted

20  with the deplaning process.  *Id.* 52:1-25.  The Duty Period ended fifteen minutes after the Block

21  In of the last flight segment.  *Id.* 58:22-59:1; Booher 135:5-10.  For Duty Periods with multiple

22  flight segments, the time period between one segment's arrival and the next segment's departure

23  was referred to as "Turn" time.  Garcia 30(b)(6) 27:13-28:7; Booher 216:6-13.  During the Turn,

24  Plaintiffs were not required to stay on the plane, did not have any job duties and generally were

25  free to do whatever they wanted, such as eat, shop, or watch a movie.[5]  Garcia 30(b)(6) 52:17-19,

26

27  ───────────────────
    [5] The FAA has regulatory authority over air transportation in the United States.  14 C.F.R, Chap.

28  I, Subchap. G.  Under the FAA's duty period limitations and rest requirements, a duty period
    includes all of an FA's time between report and release, including Turn time.  C.F.R. § 121.467.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

55:12-23; Reid 194:18-195:7; Booher 261:14-262:9.  Plaintiffs needed only to report to the gate 45 minutes before the next flight's departure time.  Garcia 30(b)(6) 54:4-10, 61:8-14.

### C.      Plaintiffs' Flight History

#### 1.      Reid

During the relevant time period for Reid's Section 226 claim – *i.e.*, August 31, 2014 through her termination in August 2015[6] – Reid was on duty for 1,049.7 hours, of which she spent 267.1 hours (25.4%) working in California.  Declaration of Valentin Estevez ("Estevez Decl."), Ex. A at 5.  Of the 153 days Reid worked during that period, 123 days (80.4%) involved at least some work at non-California airports.  *Id.*

Plaintiffs identify 28 Duty Periods during which Reid was on duty for more than eight hours.  Docket ("Dkt.") No. 60-18.  Plaintiffs' calculations assume that flight time on intra-California flights is considered time worked within California.  Those 28 Duty Periods include those in which Reid had extended Turn times and/or for which she was credited at a Premium Pay Rate equal to one and a half times her regular rate of pay.  *Id.*; Killeen Decl., Ex. H.

#### 2.      Booher[7]

Plaintiffs identify four Duty Periods during which Booher was on duty for more than eight hours.  Dkt. No. 60-18.  Plaintiffs' calculations assume that flight time on intra-California flights is considered time worked within California.  Those four Duty Periods include those in which Booher had extended Turn times, a deadhead flight, and/or was credited at a Premium Pay Rate equal to one and a half times his regular rate of pay.  *Id.*; Killeen Decl., Ex. I.

---

[6] The statute of limitations for Plaintiffs' Section 226 claim is one year.  Cal. Code Civ. Proc. § 340(a).  Booher filed the initial complaint on March 13, 2015.  Dkt. No. 1.  Booher's employment with JetBlue ended almost two-and-a-half years earlier, in October 2012.  *Id.* at ¶ 5.  Accordingly, ***Booher's Section 226 claim is time-barred and should be dismissed***.  *See also* Dkt. Nos. 15, 31, 36 (Third Defense – Statute of Limitations).  In addition, because Booher did not assert a valid Section 226 claim, the statute of limitations period for Reid's Section 226 claim should run from the date she joined this lawsuit – August 31, 2015.  Dkt. No. 30.

[7] From March 13, 2011 through his termination in October 2012, Booher was on duty for 2,519.2 hours, of which he spent approximately 422.4 hours (16.8 %) working in California.  Estevez Decl., Exh. A at 5.  Of the 261 days Booher worked during that period, 235 days (or 90%) involved at least some work at non-California airports.  *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1

### D.   Flight Attendant Compensation

2   As set forth in JetBlue's prior partial summary judgment motion (Dkt. No. 46), for every

3   trip that Plaintiffs worked, JetBlue applied four calculations to determine the total credits

4   awarded.  The Flight Pay Formula multiplied Plaintiffs' Flight Pay Rate by the greater of the

5   scheduled or the actual flight time.  Killeen Decl., Ex. G, § H.2; Booher 109:1-110:6.  The Time

6   Away from Base ("TAFB") RIG Formula credited Plaintiffs with one hour of their Flight Pay

7   Rate for every three and a half hours spent away from base.  *Id.* at § H.4.  The Minimum Pay for

8   Single/Multiple Duty Period RIG Formula guaranteed Plaintiffs five hours of credit for each Duty

9   Period.  *Id.* at § H.5; Booher 173:16-175:13.  The Duty RIG (1:2) Formula credited Plaintiffs with

10   one hour of credit for every two hours of actual time on duty.  *Id.* at § H.6.  These formulas

11   "expressly consider all hours worked in the first instance" and "Plaintiffs [were] paid for all hours

12   worked, based on the minimum guarantee in the Bid Packet and considering all hours actually

13   worked."  *Booher v. JetBlue Airways Corp.*, 2016 WL 1642929, at *3 (N.D. Cal. Apr. 26, 2016).

14   JetBlue calculated the total number of credits Plaintiffs would receive under each formula,

15   multiplied the credits by their Flight Pay Rate,[8] as well as any applicable pay rate increases[9]

16   (including a Premium Pay Rate of one-and-a-half times their Flight Pay Rate for all hours

17   credited over 70 in a month), compared the sums, and credited Plaintiffs with the greatest total

18   value.  *See* Garcia 30(b)(6) 146:20-147:5; Killeen Decl., Ex. G, §§ H.2-H.6.  JetBlue also credited

19   Plaintiffs with one hour at their Flight Pay Rate for every two hours they spent on standby (and 4

20   hours, 12 minutes of credit for a full, six-hour standby period), and when a flight was delayed or

21   held at the gate for more than one hour after boarding, JetBlue provided Plaintiffs a premium

22   called Ground Holding Time.  Killeen Decl., Ex. G, § H.9.  JetBlue also provided Plaintiffs with

23   Time Away from Base or Per Diem pay, which was an additional meal expense reimbursement

24   _____

[8] The "Flight Pay Rate" is "the rate at which any of the pay formulas are credited per hour."
25   Garcia 30(b)(6) 105:20-23.

[9] For example, JetBlue increased Plaintiffs' Flight Pay Rate when they:  (a) were scheduled to fly
26   on specific holidays ("Holiday Incentivized Pay"); (b) served as the F1 FA (Crew Leader) or an
"Inflight Coach" (a trainer role for a new-hire); (c) flew any segment that operated between 1:00
27   a.m. and 5:00 a.m. ("Night Override Flying"); or (d) participated in the Language of Destination
Program.  Killeen Decl., Ex. G, § H.25; Reid 121:6-123:13; Booher 183:21-184:17, 185:12-23,
28   186:3-187:23, 189:25-190:14, 225:7-226:2, 242:18-244:7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   paid as an hourly rate for every hour spent away from base for any Pairing, including the time

2   when Plaintiffs were not on duty (*i.e.*, on layovers).  Killeen Decl., Ex. G, § H.11.

3        **E.**     **Plaintiffs' Pay Information And Wage Statements**

4        JetBlue paid Plaintiffs for a Bid Period through semi-monthly paychecks issued on the

5   20th day of the month and the 8th day of the following month.  Garcia 30(b)(6) 174:10-12.

6   JetBlue provided Plaintiffs (and all FAs) a monthly guarantee of 70 credits at their Flight Pay

7   Rate.  Killeen Decl., Ex G, § H.1.  The paycheck on the 20th contained 35 credit hours – *i.e.*, half

8   of Plaintiffs' monthly guarantee – and Plaintiffs' Per Diem pay for the prior month.  *Id.*  After  the

9   Bid Period's close, JetBlue calculated Plaintiffs' total credits for that Bid Period, and determined

10  which additional pay rates to apply and which additional payments to make.  *Id.*, § H.2; Garcia

11  30(b)(6) 146:20-147:5.  JetBlue then paid Plaintiffs their remaining 35 credit guarantee, as well as

12  all additional credits, premium rates, and payments for that Bid Period in the paycheck on the 8th

13  day of the following month.  Garcia 30(b)(6) 174:19-22;  Killeen Decl., Ex. G, § H.1

14       JetBlue always provided wage statements to Plaintiffs when it paid their wages.  Booher

15  227:7-11; Reid 161:7-15, 162:17-163:9.  JetBlue reported each of the payments it made to

16  Plaintiffs as a separate line-item on the corresponding wage statement, which showed the number

17  of credits and applicable rate for each category, all approved withholdings, and all applicable

18  taxes and deductions, both for the pay period and for year to date.  *See* Killeen Decl., Exs. J-K.

19       Plaintiffs also had constant online and remote access to JetBlue's Rainmaker system.

20  Reid 83:18-22; Garcia 30(b)(6) 124:17-22.  Rainmaker contained detailed, real-time pay

21  information about their flying and non-flying activities each Bid Period, calculated Plaintiffs'

22  credit totals, and provided a report showing, *inter alia*, the formula applied to each Duty Period,

23  the total number of credit hours due for the Bid Period, and a breakdown of the credits received.

24  Reid 83:18-84:1, 159:19-24, 171:13-172:1; Garcia 30(b)(6) 146:13-19; Killeen Decl., Ex. L.

25  **III.**    **JETBLUE IS ENTITLED TO SUMMARY JUDGMENT ON THE REMAINING**

26            **CLAIMS AS A MATTER OF LAW**

27      **A.**    **The California Labor Code Does Not Apply To Plaintiffs Because They**
              **Principally Worked Outside of California During the Relevant Time Periods.**

28  The principal purpose of Plaintiffs' employment was to provide FAA-mandated, in-air

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1    services to, and ensure the safety of, passengers travelling through the federal (and international)

2    airspace.  Plaintiffs were based out of Long Beach Airport ("LGB") in California, but they

3    performed the vast majority of their duties while travelling between airports in JetBlue's

4    "BlueCities" located throughout the United States, Mexico and/or the Bahamas.  That air travel,

5    including on intra-California flights, occurred in the federally-regulated airspace under the U.S.

6    Government's exclusive sovereignty.  49 U.S.C. § 40103(a); *Oman v. Delta Air Lines, Inc.*, 2016

7    WL 66838, at *6 (N.D. Cal. Jan. 6, 2017) 2017 WL 66838, at *6 (holding that Section 226 does

8    not cover FAs, including California-based and California-resident FAs, because, *inter alia*, they

9    worked in the "federal airspace…during each pay period and day at issue"); *Hirst v. SkyWest*

10   *Airlines, Inc.*, 2016 WL 2986978, at *10, n. 13 (N.D. Ill. May 24, 2016) (stating that Illinois has

11   no sovereignty over the airspace above it and that its wage and hour laws arguably should not

12   apply to the time FAs spend over Illinois because "none of the flight time…can be said to have

13   occurred within [the state]").  Moreover, Plaintiffs' limited time working on the ground within

14   California was spent performing duties that were directed toward providing inflight service – *e.g.*,

15   their pre-flight duties focused on preparing the plane for departure and gathering the information

16   Plaintiffs needed to perform their job during the flight.  *See* Booher 252:22-2, 255:1-15; Reid

17   177:1-4, 190:14-18, 191:25-192:18.  Accordingly, unlike employees whose jobs require them to

18   work principally or exclusively in California either on a daily, weekly, or pay period basis,

19   Plaintiffs' work at issue here related entirely to interstate travel requiring them to spend the vast

20   majority of their time working outside of California (or any other state) in the air.

21           Over forty years ago, the United States Supreme Court established what is now commonly

22   referred to as the "job situs" test.  *Oil, Chemical and Atomic Workers Int'l Union v. Mobil Oil*

23   *Corp.*, 426 U.S. 407 (1976) (holding that Texas's right-to-work law did not apply to workers

24   working predominantly at sea who were hired and living in Texas).  To "minimize the possibility

25   of patently anomalous extra-territorial application of any given State's right-to-work laws," the

26   Supreme Court decided against relying solely on the place of hire or utilizing generalized factors.

27   *Id.* at 418-20.  Instead, the employees' "predominant job situs" would dictate whether Texas law

28   would apply to workers hired, and most living in, Texas who worked predominantly at sea.  *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

The California Supreme Court established a similar test in *Tidewater Marine W. Inc. v. Bradshaw*, holding that the presumption that an employee is a "wage earner of California" enjoying the protection of the Industrial Welfare Commission's ("IWC") regulations applies only if the employee also "***works exclusively, or principally, in California.***"  14 Cal. 4th 557, 578 (1996) (emphasis added).  Since then, District Courts in California have analyzed where employees principally work when determining whether California's employment laws apply. *See, e.g.*, *Oman*, 2017 WL 66838, at **6-7; *Ward v. United Airlines, Inc.*, 2016 WL 3906077 (N.D. Cal. July 19, 2016); *Aguilar v. Zep Inc.*, 2014 WL 4245988, at *13-14 (N.D. Cal. Aug. 27, 2014) ("the critical factor is where the work at issue is performed"); *Vidrio v. United Airlines, Inc.*, No. 15-cv-07985-PSG-MPW, Dkt. No. 47 at 3 (C.D. Cal. Mar. 15, 2017);[10] *Shook v. Indian River Transport Co.*, 2017 WL 633895, at *5 (E.D. Cal. Feb. 15, 2017); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 633 F. Supp. 2d 883, 899 (C.D. Cal. 2009) (holding that a California resident who spent between eighty and ninety percent of his employment working outside of California did not qualify as a California wage earner).

      1.    Section 226 Does Not Apply To Reid Because She Principally Worked Outside Of California During The Relevant Time Period.

Plaintiffs cannot deny that the nature of their job required them to work in multiple jurisdictions, including the federal airspace, almost every day that they worked, and that they principally worked outside of California throughout their employment.  Indeed, from August 31, 2014 through her termination in August 2015, Reid spent 24.7 percent of her hours working within California.[11]  That is, even as a California-based FA, she still spent more than 75 percent of her time *outside* California.  Moreover, 80.4 percent of Reid's work days involved at least some work at non-California airports.[12]  Estevez Decl., Ex. A at 5.  As a result, Reid did not

---

[10] The *Vidrio* decision is attached as Ex. M to the Killeen Declaration.

[11] As discussed above (*supra*, n. 6), because Booher's employment terminated in October 2012 and he did not file the initial Complaint until March 13, 2015, his Section 226 claim is time-barred.  Cal. Code Civ. Proc. § 340(a); Dkt. No. 1, ¶ 5.  Nonetheless, from March 13, 2011 through his termination, Booher spent 16.8% of his hours working within California and 90% of his work days involved at least some work at non-California airports.  Estevez Decl., Ex. A at 5.

[12] Plaintiffs were not employees "who [left] the state *temporarily* during the course of the *normal workday*."  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1199 (2011) ("*Sullivan I*") (emphasis

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   principally, or exclusively, work in California during the relevant time period, and California law

2   should not apply to the limited hours she worked in California. *Oman*, 2017 WL 66838, at **6-7

3   (holding that "there is no basis to apply Section 226's procedural protections to the named

4   plaintiffs" because, in part, the plaintiffs only worked as much as 14% of their time in California);

5   *Ward,* 2016 WL 3906077 (holding that Section 226 did not cover pilots, including the California-

6   based and resident plaintiff, who worked as much as 42% of their time in California); *Vidrio*, Dkt.

7   No. 47 at 3 (holding that Section 226 did not apply to FAs who spent approximately 80 percent of

8   their time working outside of California); *see also Shook*, 2017 WL 633895, at *5 (holding that

9   California-resident drivers whose routes began or ended in California, some of whom spent

10  nearly half their work time in California in any particular pay period, did not principally work in

11  California because they spent the majority of their time working outside California).

12      In *Ward*, Judge Alsup held that Section 226 did not apply to pilots who spent as much as

13  42 percent of their work time in California in a bid period because they did not principally work

14  in California.  2016 WL 3906077.  He further found that "Section 226 – like the rest of

15  California's labor laws –" does not apply to employees, even those based in and/or residing in

16  California, who work primarily outside of California, because he recognized the absurd results

17  that would arise if Section 226 were to apply whenever an employee spends a fraction of his or

18  her work time in California.  *Ward*, 2016 WL 3906077, at **4-5 ("Section 226 must be subject to

19  the same jurisdictional limits as the wage-and-hour statutes and regulations to which it relates.").

20      Plaintiffs' contention that *Ward* – a Section 226 case – somehow runs afoul of *Sullivan I* –

21  an overtime case – demonstrates both their misinterpretation of precedent and transparent attempt

22  to improperly expand *Sullivan I's* limited holding beyond California's overtime provisions.  First,

23  Plaintiffs argue that where they principally worked is inconsequential; rather, their performance

24  of *any* work within California availed them to "all protections, rights and remedies available

25

26

---

27  added).  Accordingly, "limited" extraterritorial application of California law to California resident
    employees of California employers is not warranted here.  *See id.* at 1199-1200 ("California

28  law…*might* follow California resident employees of California employers who leave the state
    'temporarily…during the course of the normal workday.'") (Emphasis added).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   under state law."[13]  Dkt. No. 60 at 21.[14]  *Sullivan I*, however, did not reject or replace the job situs

2   test.  Rather, it held that nothing in the State Supreme Court's *Tidewater* decision suggested that

3   an employee of a "California employer" could enter California "for entire days or weeks without

4   the protection of California law."  *Sullivan*, 51 Cal. 4th at 1200.  That is, the employees were

5   eligible for daily and weekly overtime because they *exclusively* worked in California on those

6   days and weeks – *i.e.*, their "job situs" for those days and weeks was California – and their

7   employer (Oracle) was based in California.  *Id.*

8        Second, the California Supreme Court "was careful to limit its holding [in *Sullivan I*] to

9   overtime under Section 510, and repeatedly noted that its conclusion under Section 510 did not

10  automatically apply to other provisions of the Labor Code, for example, *those regulating 'pay*

11  *stubs.'*"  *Oman*, 2017 WL 66838, at *5 (emphasis added); *see Sullivan I*, 51 Cal. 4th at 1201

12  ("California's interest in the content of an out-of-state business's pay stubs…may or may not be

13  sufficient to justify choosing California law over the conflicting law of the employer's home

14  state.  No such question is before us.").  Indeed, the Court refused "to hold that IWC wage orders

15  apply to *all* employment in California."  *Sullivan I*, 51 Cal. 4th at 1201 (emphasis added).  As

16  such, *Sullivan I* neither precludes the job situs test relied upon in *Ward* nor applies to Section 226.

17  *See also Oman*, 2017 WL 66838, at *5 ("[N]either *Sullivan I* nor the subsequent decision from

18  the Ninth Circuit in *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1267 (9th Cir. 2011) (*Sullivan II*)

19  address the question" of whether "when any work is performed within California, the employee

20  should receive a Section 226-compliant wage statement regardless of where the bulk of her or his

21

22  [13] Plaintiffs claim that JetBlue must provide California-compliant wage statements whenever
    Plaintiffs worked in California regardless of how long they were in California.  For example,

23  Plaintiff Reid worked 8.7 hours (out of a total 52.4 hours) in California and 9.9 hours in
    Washington during the September 1 through September 15, 2014 pay period.  Estevez Decl., Ex.

24  A at 5.  Nonetheless, Plaintiffs argue that JetBlue was required to provide Reid with a California-
    compliant wage statement.  Applying such a rule would trigger liability under California's wage

25  and hour laws whenever any employee worked in California regardless of the circumstances.  For
    example, under Plaintiffs' theories, California law would cover a New York-based employee who

26  works on a report while on a layover in California while travelling from New York to Alaska
    during that time.  The California legislature did not intend such illogical applications of California

27  law, which are precisely why courts utilize the job situs test.

28  [14] All page citations to docket entries are to the ECF filed page.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1    work in the relevant pay period is performed.").

2         Plaintiffs similarly attempt to dissuade this Court from relying on Judge Orrick's recent

3    decision in the nearly identical *Oman* case in which Delta FAs (whom Plaintiffs' counsel here

4    represented) brought an identical claim that Delta's wage statements do not comply with Section

5    226.  Contrary to Plaintiffs' contention here that Judge Orrick "ignored" *Ward's* job situs test,

6    Judge Orrick noted that the analysis in *Ward* was instructive and stated that "it is wrong to ignore

7    whether California can be considered the situs of the Flight Attendants' work sufficient to invoke

8    Section 226's wage statement requirements."  *Oman*, 2017 WL 66838, at *5.  Moreover, Judge

9    Orrick found that Plaintiffs' assertion "that the amount of time worked in California – either

10   during the class period or during a particular pay period – is irrelevant to the applicability of

11   Section 226" disregarded "important California and federal precedent to the contrary" including

12   *Tidewater*.  *Id.* at *6.  Accordingly, Judge Orrick analyzed the *Oman* Plaintiffs' (three of whom,

13   like Reid, are California-based and residents) work location and found:  "[B]ecause the

14   undisputed facts show that the named plaintiffs only worked a *de minimis* amount of time in

15   California (ranging from 2.6% to a high of 14%), and in light of the nature of their work

16   (necessarily working in federal airspace as well as in multiple other jurisdictions but [sic] during

17   each pay period *and day* at issue)….[T]here is no basis to apply Section 226's procedural

18   protections to the named plaintiffs."[15]  *Id.* at *7 (emphasis added).[16]

19   _____

20   [15] It is clear that Judge Orrick did not rely on the "*de minimis*" off-the-clock work doctrine set
     forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) which Plaintiffs raise in an
21   attempt to distinguish *Oman*.  Dkt. No. 60 at 24-25.  Rather, Judge Orrick referenced the time
     percentages the *Oman* Plaintiffs worked within California and found that those percentages
22   established that Section 226 did not apply to those Plaintiffs.  *Oman*, 2016 WL 66838, at *6.
     [16] Before reaching his decision in *Oman*, Judge Orrick also discussed Judge Tigar's decision in
23   *Bernstein v. Virgin America, Inc.*, 2017 WL 57307 (N.D. Cal. Jan. 5, 2017) on which Plaintiffs
     rely.  In *Bernstein*, Judge Tigar rejected the job situs test and instead set forth a new, multi-factor
24   test that he concluded warranted applying the California Labor Code to a class of Virgin's
     California-based FAs.  *Id.*  Judge Tigar disregarded the percentage of time the *Bernstein* Plaintiffs
25   worked in California, finding that several other factors established Virgin's "deep ties" to
     California thereby supporting his holding:  (a) the Plaintiffs were California residents; (b)
26   Virgin's FAs occasionally worked entire days on consecutive, intra-California flights; (c) Virgin
     is headquartered in California; (d) the alleged wrongful conduct, including the issuance and
27   application of compensation policies, emanated from California; (e) Virgin received millions of
     dollars in state subsidies to train its FAs in California; and (f) 88-99% of Virgin's daily flights

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1    Regardless of whether this Court applies the job situs test or the multi-factor test applied

2    in *Bernstein*, like Judge Alsup in *Ward* (United pilots), Judge Orrick in *Oman* (Delta FAs), and

3    Judge Gutierrez in *Vidrio* (United FAs), this Court should find that Section 226 does not apply to

4    Reid (or to Booher).  There is a presumption against the extraterritorial application of California

5    law in that it did not follow Reid whenever her Pairings took her outside of California.  *Wright v.*

6    *Adventures Rolling Cross Country, Inc.*, 2012 U.S. Dist. LEXIS 104378, at *11-14 (N.D. Cal.

7    May 3, 2012); *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916).  That presumption is

8    rebutted only where a contrary intent is "clearly expressed or reasonably to be inferred from the

9    language of the act or from its purpose, subject matter or history."  *Pillsbury*, 174 Cal. at 4.

10    Reid cannot overcome the presumption against the extraterritorial application of Section

11    226.  Plaintiffs rely on the same legislative intent arguments that Judge Orrick correctly rejected

12    in *Oman*.  2017 WL 66838, at *7 ("Plaintiffs also make a totally unfounded legislative history

13    argument that recent amendments to Section 226 evince the legislature's intent to apply Section

14    226 to all other workers who sometimes work outside of the state.").  The most recent amendment

15    to Section 226 has no relation to and does not justify applying the statute extraterritorially.

16    Rather, recognizing the futility of requiring employers to report hours worked on wage statements

17    provided to exempt employees, the Legislature adopted the amendment to clarify that Section

18    

19    departed from and/or arrived at California airports.  2017 WL 57307, at **4-8.  Just as Judge
20    Orrick found in *Oman*, 2017 WL 66838, at *6, the facts here are starkly different:  (a) JetBlue is
      incorporated in Delaware and maintains its headquarters in New York; (b) it prepares, issues, and
21    applies its FA compensation policies from its New York headquarters; (c) its FA training
      primarily occurs at its Orlando training centers; (d) only 7.3% of its daily flights depart from
22    and/or arrive at California-based airports; and (e) 4.2% of its FA workforce is California-based.
      Killeen Decl., Ex. F at 1; Garcia Decl., ¶¶ 2-6; Rahman Decl., ¶ 8.  Judge Gutierrez very recently
23    applied a similar analysis in the *Vidrio* case, holding that "whether the Court applies the job situs
      test as in *Ward* or adopts a multi-factor approach as in *Bernstein* and *Oman*, the outcome in this
24    case remains the same" – California-based and resident FAs could not assert a Section 226 claim.
      *Vidrio*, Dkt. No. 47 at 8-9 (noting that (a) class members who spent, on average, 18 percent of
25    their work in California, did not principally work in California, (b) United was neither based nor
      headquartered in California, and (c) its operations in California constituted less than 20 percent of
26    its overall business); *see also Shook*, 2017 WL 633895 (contrasting the facts in *Bernstein* and
      holding that Section 226 did not apply to drivers' work outside of California because, *inter alia*,
27    they did not principally work in California, defendant was neither based nor had its headquarters
      in California, its policies were developed in Florida, and driver training occurred in Florida).

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

226's "total hours worked" requirement did not apply to employees who an existing statute or IWC Order already had determined to be exempt. Sen. Lab. & Ind. Rel. Committee, Senate Floor Analysis for AB 2535, at p. 3 (June 29, 2016), Request for Judicial Notice ("RJN"), Ex. A; *Oman*, 2017 WL 66838, at *7. There was no analysis of why those positions previously had been exempt from Section 226 or whether any other position should be exempt from Section 226.[17]

2. California's Overtime Law Does Not Apply To Plaintiffs Because They Principally Worked Outside Of California On The Identified Days.

Plaintiffs also cannot overcome the presumption against the extraterritorial application of California's overtime law. There is nothing in California Labor Code section 510 or IWC Wage Order No. 9 that clearly expresses or reasonably infers any intent to apply extraterritorially – intent the California Legislature expressed in other Labor Code provisions, such as in the workers' compensation law. *Tidewater*, 14 Cal. 4th at 577 (noting that, "[i]n some circumstances, state employment law explicitly governs employment outside the state's territorial boundaries"). Instead, California's overtime law applies only to individuals who work more than eight hours in a day or more than 40 hours a week *in California*. *See Sullivan I*, 51 Cal. 4th at 1200.

Plaintiffs cannot meet those thresholds without this Court finding that the federally-regulated airspace above California that is under the U.S. Government's exclusive sovereignty is still under California's jurisdiction. 49 U.S.C. § 40103(a). However, California has no sovereignty over airplane travel occurring in the skies above it and, thus, its wage and hour laws, including its overtime laws, should not apply to the time Plaintiffs worked in that federal airspace. *See Hirst*, 2016 WL 2986978, at *10, n. 14; *Oman*, 2017 WL 66838, at *6 (noting that by the very nature of their job FAs worked in the "federal airspace…during each pay period and day at issue"); S. Rept. 1811, 85th Cong., 2d Sess., at p. 5 (1958), RJN, Ex. B (The airline industry "is

---

[17] Plaintiffs' reliance on California's paid sick leave law and IWC Wage Order No. 9 is equally unavailing. "As the *Sullivan I* court recognized, the determination of whether a Labor Code provision extends to work performed in part in California depends on an analysis of the particular Labor Code provision at issue." *Oman*, 2017 WL 66838, at *7, n. 10 (citing *Sullivan I*, 51 Cal. 4th at 120). Nonetheless, Plaintiffs present no evidence that the Legislature revised Labor Code § 245.5(a)(4) to address its extraterritorial application. Similarly, there is nothing in the text, purpose, subject matter, or history of Wage Order 9 that implies its provisions, either as a whole or separately, apply extraterritorially.

unique among transportation industries in its relation to the federal government – it is the only one whose operations are conducted *almost wholly within federal jurisdiction*") (emphasis added).  Accordingly, Plaintiffs were eligible for overtime only if California law applies to work performed outside of California – extraterritorially in federal airspace and/or airports in other states – an application that the overtime law does not intend.

Accordingly, Plaintiffs cannot establish that the California Labor Code applies to them because they principally worked outside of California.  Nor can Plaintiffs overcome the presumption against the extraterritorial application of California law.  Consequently, Plaintiffs were not California wage earners to whom the Labor Code's provisions applied.

**B.      Requiring JetBlue to Comply with California's Wage Statement and Overtime Laws Would Violate the Dormant Commerce Clause.**

In demanding that JetBlue comply with Sections 226 and 510, Plaintiffs ostensibly are arguing that JetBlue must comply with all of California's wage and hour laws, as well as the ever-changing, occasionally conflicting, national patchwork of wage and hour laws.  Accordingly, even if the Court were to determine that applying Sections 226 and 510 to Plaintiffs would not violate the presumption against extraterritoriality, those laws are unconstitutional in that they violate the Dormant Commerce Clause when applied to JetBlue here.

1.      California May Not Project Its Wage Statement Laws Into Every Other State In Which Plaintiffs Worked.

The Dormant Commerce Clause "ensures that state autonomy over 'local needs' does not inhibit 'the overriding requirement of freedom for the national commerce.'"  *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015).  To determine whether a statute that is not facially discriminatory violates the Dormant Commerce Clause, courts balance the burdens on interstate commerce against the state's interests.  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *United Air Lines, Inc. v. Indus. Welfare Comm'n*, 211 Cal. App. 2d 729, 747-48 (1963).  When the statute imposes an undue burden that vastly outweighs the "local needs," the statute may not stand.  *Ward*, 2016 WL 3906077, at *5.

The burden on interstate commerce is especially significant in the airline industry, the

services of which are "inherently national" and "require a uniform system of regulation." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (recognizing that state regulations that impose significant burdens on interstate transportation are "classic examples" of nondiscriminatory laws that violate the Dormant Commerce Clause); *see also* S. Rept. 1811, 85th Cong., 2d Sess., at 5 (1958) (The airline industry "is the only one whose operations are conducted almost wholly within federal jurisdiction"); *Montalvo v. Spirit Airlines*, 508 F.3d 464, 474 (9th Cir. 2007) ("Regulation on a national basis is required because air transportation is a national operation."); *Hirst*, 2016 WL 2986978, at *10-11.  The airline industry's unique nature is even greater when focusing on its essential, mobile workforce like FAs.  There are only a handful of cases analyzing whether state wage and hour laws violate the Dormant Commerce Clause when applied to such individuals.[18]  With the exception of *Bernstein*,[19] in each one the court found that the laws are preempted.  *Ward*, 2016 WL 3906077 at

---

[18] Plaintiffs, however, ask the Court to rely on cases that analyze other industries, types of workers, laws and regulations, including laws and regulations promulgated and implemented outside of California, and apply their holdings here.  *See* Dkt. No. 60 at 20-25, citing *Sullivan II*, 662 F.3d 1265 (9th Cir. 2011) (California's overtime law applied to trainers); *Rocky Mountain Farmers Union v. Corey*, 703 F.3d 1070 (9th Cir. 2013) (Low Carbon Fuel Standard regulations); *Huron Portland Cement Co. v. City of Detroit, Mich.*, 362 U.S. 440 (1960) (Detroit's Smoke Abatement Code); *Barclays Bank PLC v. Franchise Tax Bd. Of California*, 512 U.S. 298 (1994) (California's method for determining corporate franchise tax liability); *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389 (9th Cir. 2015) (Seattle's minimum wage ordinance as applied to out-of-state franchisors, franchisees and suppliers); *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154 (9th Cir. 2011) (California's Vessel Fuel Rules); *Lloyd A. Fry Roofing Co. v. Wood*, 344 U.S. 157 (1952) (Arkansas state licensure requirements); *Atl. Coast Line R. Co. v. Mazursky*, 216 U.S. 122 (1910) (South Carolina law governing freight charges); *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008 (9th Cir. 1994) (Washington Department of Wildlife regulations); *Burlington  N.R. Co. v. Dep't of Pub. Serv. Regulation*, 763 F.2d 1106, 1114 (9th Cir. 1985) (Montana statute requiring railroads to maintain and staff station facilities solely within the state); *Pharm. Research & Man. Of America v. Cty. Of Alameda*, 768 F.3d 1037 (9th Cir. 2014) (Safe Drug Disposal Ordinance).

[19] As discussed above, Judge Tigar relied heavily on Virgin America's "deep ties" to California to find that the Labor Code followed Virgin America's California-based and resident FAs wherever they work.  "Virgin is simply being required [to] comply with the law of the state where it chose to headquarter its business, where its California-resident employees performed work based out of California airports, and where it made critical decisions regarding how it would compensate its employees that are now being challenged in this lawsuit."  *Bernstein*, 2017 WL 57307, at *10.  With the exception of Plaintiffs' base and residence here, "all of the compelling considerations that weigh[ed] in favor of applying California law" to Virgin America in *Bernstein*, weigh *against*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   *5; *United Air Lines, Inc. v. Indus. Welfare Com.*, 211 Cal. App. 2d 729, 747-78 (1963); *Hirst*,

2   2016 WL 2986978, at *10 (holding that the Dormant Commerce Clause would be violated if state

3   wage and hour laws were applied to FAs' claims because their duties required them to work in

4   multiple states).[20]   That is because complying with the full panoply of the ever-changing state

5   wage and hour statutes and regulations, and their interpretations, with respect to FAs would place

6   a significant burden upon interstate and international air carriers' operations.[21]

7           For example, on the wage statement claim, even if Reid worked only nine percent of her

8   time in California during a pay period (as she did from September 1 through September 15, 2014

9   (Estevez Decl., Ex. A at 5)), Plaintiffs claim that JetBlue must have provided her with a

10   California-compliant wage statement covering all of her hours worked, including the ninety-one

11   percent of her duty hours working outside of California.   That is, if Reid worked at least one

12   minute in California, JetBlue should have treated that entire pay period as having occurred in

13   California and reported all of her time worked and all of her compensation earned in jurisdictions

14   other than California on a California-compliant wage statement.[22]   Accordingly, California law

15

16   applying California law in this case.  *Id.*  JetBlue does not have significant ties to California and
the allegedly wrongful conduct at issue here occurred in New York.

17   [20] Judge Orrick did not address the Dormant Commerce Clause in *Oman* because he did not reach
this issue after finding that "there is no basis to apply Section 226's procedural protections" to the

18   plaintiff FAs, including those who both lived in and were based in California, based on

19   extraterritorial application principles.  *Oman*, 2017 WL 66838, at *7, n.12.

20   [21] While Plaintiffs' motion is limited to claims under Sections 226 and 510, their position
essentially is that once a duty or pay period is considered a duty or pay period worked in
California, all of California's wage and hour laws should apply.

21   [22] The alternative would be to report only the limited time Plaintiffs worked in California on a
California-compliant wage statement.  JetBlue, however, neither tracked the amount of time

22   Plaintiffs spent working in individual states nor paid them on a straight hourly basis.  JetBlue
would, thus, have needed to monitor Plaintiffs' schedules on a flight-by-flight basis to determine

23   when they worked in California and for how long and converted the credits they received within
that pay period into an hourly equivalent applied to Plaintiffs' hours worked in California.

24   Moreover, JetBlue would have needed to provide wage statements for every other jurisdiction in
which Plaintiffs worked during that pay period, which would have required it to perform the same

25   functions and ensure that each wage statement provided in those states complied with their
individual laws.  These are precisely the types of administrative challenges that Judge Alsup held

26   would produce an undue burden outweighing any local benefit resulting from Section 226.  *Ward*,

27   2016 WL 3906077, at *5 (holding that the burden on United was "not simply caused by requiring
United to list the rate and hours worked on the wage statements," but rather the "administrative

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1    would govern all of her work during that pay period no matter where it occurred.  California may

2    not "project its legislation into other states" in such a manner.  *Brown-Forman Distillers Corp. v.*

3    *New York State Liquor Auth.*, 476 U.S. 573, 583 (1986).[23]

4         Moreover, JetBlue's need to comply with the laws of the other states in which Plaintiffs

5    worked during the same pay period would not be reduced through its compliance with California

6    law.[24]  Plaintiffs argue that this burden would be alleviated if JetBlue created a national wage

7    statement that complies with each state's individual wage statement laws – *i.e.*, combining each

8    state's wage statement laws to create a form of national wage statement regulation.  Dkt. No. 60

9    at 30.  This argument highlights the type of burden the Dormant Commerce Clause is intended to

10   prevent.  Plaintiffs acknowledge that a California-compliant wage statement does not comply

11   with the requirements of at least two other states:  Oregon and New York (the latter of which is

12   JetBlue's headquarters location).[25]  *Id.*  They also cite the recent amendment to Oregon's law that

13   required new information on wage statements as of January 1, 2017.  *Id.*  Under Plaintiffs' theory,

14   prior to January 1, JetBlue should have provided its FAs a hybrid California-New York-Alaska-

15   Texas wage statement containing the combined, required information under each state's law.

16   Then, as of January 1, JetBlue would need to revamp its wage statements into a new hybrid that

17   incorporated Oregon's amended law.  That is, a single state, in this case Oregon, would dictate

18   the "national" regulation, but only until another state or local municipality enacts and amends its

19   law, in which case JetBlue will have to change its wage statements again (and again).

20        Applying state wage statement laws in such a way places an undue burden on employers

---

21   burden of complying with the patchwork of state wage statement statutes and regulations (and
     subsequent interpretations and developments thereof)").

22   [23] This is true even where the law is limited to activities occurring within the state if the law's
23   practical effect is to control activities occurring in other states.  *Brown-Forman*, 476 U.S. at 583.
     [24] This interpretation leads to the burden of FAs who perform the same duties on the same flights
24   being treated differently, as the Court of Appeal identified in *United Air Lines, Inc. v. Indus.*
     *Welfare Comm'n*, 211 Cal. App. 2d 729, 748-49 (1963).  For example, California and New York-
25   based FAs who worked a Boston to Chicago flight together would receive different wage
     statements covering that flight despite performing the same duties.
26   [25] At least three additional states also require information that California does not:  (1) Hawaii
27   requires the employer's phone number; (2) Alaska requires "boarding and lodging costs"; and
     (c) Texas requires that the statements "be signed by the employer or the employer's agent."  Haw.
28   Rev. Stat. § 387-6; 8 AAC § 15.160; Tex. Lab. Code § 62.003(b).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

that vastly outweighs California's interest in, for example, ensuring that its citizens are "adequately informed of compensation received."  Assem. Labor Com. Analysis of AB 3731 (1976); *see Pike*, 397 U.S. at 142; *Ward*, 2016 WL 3906077, at *5.  Moreover, it would improperly project a single state's legislation into every other state in which Plaintiffs worked in violation of the Dormant Commerce Clause.  *Brown-Forman*, 476 U.S. at 583.

<div align="center">

2.      Applying The California Labor Code's Daily Overtime Requirements To Flight Attendants Places An Undue Burden On JetBlue.

</div>

Similar undue burdens arise under California's overtime law if the law is applied to the time Plaintiffs worked in the airspace above California.  Plaintiffs contend that *Sullivan II* precludes any Dormant Commerce Clause argument with respect to California law.  Dkt. No. 60 at 21.  *Sullivan II*, however, like *Bernstein*, focused on the employer's contacts with California to find that out-of-state residents who exclusively worked within California for more than eight hours on a given day were afforded California's overtime law's protections.  662 F.3d at 1271 ("The employer, Oracle, has its headquarters and principal place of business in California; the decision to classify Plaintiffs as teachers and to deny them overtime pay was made in California; and the work in question was performed in California.").  No such contacts exist here.

*Sullivan II*'s Dormant Commerce Clause discussion also is limited to three sentences that reflect that the Court did not perform the required analysis.  After acknowledging the test for determining whether an even-handed statute implicates the Dormant Commerce Clause – that the statute "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits" – the Court concluded that California's overtime law regulates even-handedly and that there "is no plausible Dormant Commerce Clause argument" without reviewing the burdens or local benefits.  *Id.*  Accordingly, *Sullivan II* does not preclude this Court from conducting its own Dormant Commerce Clause analysis of California's overtime law as applied to the transient workers here.

Unlike the plaintiffs in *Sullivan II*, Plaintiffs here did not principally or exclusively work within California on the 32 days for which they claim they are owed overtime.  Dkt. No. 60 at 16.  Plaintiffs admit that on each of those days they worked within the federal airspace, yet contend

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   without legal basis that such time is "within California territory."  *Id.*  However, California has no

2   jurisdiction over the airspace above it because that airspace is under the U.S. Government's

3   exclusive sovereignty.  49 U.S.C. § 40103(a); *Hirst*, 2016 WL 2986978, at *10 n. 14; S. Rept.

4   1811, 85th Cong., 2d Sess. (1958).  Accordingly, Plaintiffs did not work within California for

5   over eight hours on any of the identified days.

6       The 2016 *Hirst* decision, 49 U.S.C. § 40103(a), and 1958 Senate Report were not before

7   this Court when it directed Plaintiffs to "produce specific accounting for days and flight paths

8   over and within California territory for over eight hours in a single day," and therefore warrant

9   the Court's further analysis here.  *Booher*, 2016 WL 1642929, at *4.  If Plaintiffs are correct that

10  time spent in the air *over* California was time worked *in* California, then any time that Plaintiffs

11  worked in the federal airways *above* California, including flights that never landed in California,

12  would be considered *within* California and included in any overtime calculation.  Such a rule

13  implicitly means that whenever Plaintiffs flew from Long Beach to New York (which they

14  frequently did), JetBlue should have tracked each state over which the aircraft flew and for how

15  long, to determine whether Plaintiffs were eligible for daily or weekly overtime under any state's

16  laws, not just California's.  This is the exact scenario that Judge Alsup recognized as creating an

17  undue burden in violation of the Dormant Commerce Clause – JetBlue would need to monitor

18  FAs' precise hours working in each state, determine which states' laws applied in each bid period,

19  and then ensure compliance with each state's laws.  *Ward*, 2016 WL 3906077, at *5.

20      Judge Alsup's reasoning in *Ward* applies with equal force here.  Requiring JetBlue to

21  comply with California's overtime law on days in which Plaintiffs flew into, out of, or over

22  California would impose significant administrative costs that would create an undue burden on

23  interstate commerce.  Compliance with California's daily overtime law is far more complicated

24  for a national airline like JetBlue than it is for businesses "on the ground" with operations

25  contained within, and employees working principally or exclusively within, California's

26  territorial boundaries.  In claiming that JetBlue must comply with California overtime law,

27  Plaintiffs disregard their job's mobility and the indisputable fact that they (and most FAs) spent

28  the majority of their time working outside of California, in many different states and/or in the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   federal airspace, within the same day.

2       The undue burden of the requirements Plaintiffs seek to impose vastly outweighs

3   California's interest in ensuring that employees who do not principally work in California receive

4   the full protections of its employment laws.  *Pike*, 397 U.S. at 142; *see also Bibb v. Navajo*

5   *Freight Lines*, 359 U.S. 520, 529 (1959).  Accordingly, the Dormant Commerce Clause precludes

6   applying the California Labor Code's overtime pay requirements to Plaintiffs.

7       **C.**    **JetBlue's Wage Statements Accurately Reflected JetBlue's California-Compliant Compensation System.**

8

9       Under California law, JetBlue is required to furnish an "accurate itemized wage

10   statement" to a California employee "at the time of each payment of wages."  Cal. Lab. Code

11   § 226(a).  Plaintiffs allege that JetBlue failed to provide wage statements showing all "the total

12   hours worked, the rates of pay, and the hours worked at each rate of pay" during each pay period

13   in violation of Section 226.  *See* Dkt. No. 60 at 12.  In doing so, Plaintiffs misconstrue and ignore

14   the Court's prior analysis and the factual evidence in an effort to re-litigate their previously

15   adjudicated and dismissed minimum wage claim.

16       JetBlue's wage statements accurately reflected the manner in which it compensated

17   Plaintiffs.  As this Court previously held, JetBlue's compensation formulas together "expressly

18   consider[ed] all hours worked in the first instance" and ensured "that Plaintiffs [were] paid for all

19   hours worked."  *Booher*, 2016 WL 1642929, at *3.  Individually, the Duty RIG formula directly

20   correlated to Plaintiffs' time on duty and, thus, is most akin to an hourly system in that Plaintiffs

21   were paid a set hourly rate (*i.e.*, half their Flight Pay Rate) for each hour on duty.  The remaining

22   formulas either guaranteed a baseline credit amount for each Duty Period or measured the

23   Plaintiffs' flight time or time away from base.  They were not directly tied to Plaintiffs' total

24   hours worked and, thus, the hourly rate Plaintiffs earned when one of the other three formulas

25   generated the highest amount of compensation varied on a Pairing by Pairing basis.  That is, there

26   is no single, hourly rate that Plaintiffs received for each hour on duty.[26]  As a result, while

27

28   [26] Plaintiffs' "Fact" section also reargues the manner in which Reid was paid on May 9, 2012, a Duty Period JetBlue fully addressed in briefing on the prior cross-summary judgment motions.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

JetBlue's formulas ensure that "Plaintiffs are paid for all hours worked" (*id.*), its compensation system cannot be easily transcribed to a California-compliant, itemized wage statement.

Nonetheless, JetBlue's wage statements identified the pay period and pay date, and included separate line items for every category of compensation Plaintiffs received during each pay period, including earnings for their regular schedule, premium rates, Inflight Coaching, Night Override Flying, per diem, holidays, ground holding time and any other payment, as well as all withholdings and deductions. Killeen Decl., Exs. J-K. For each payment, the wage statements show the applicable pay rate, the number of hours or credits applied to each, and the amounts earned/deducted for the applicable pay period and year to date. *Id.* Moreover, Plaintiffs had constant access through JetBlue's Rainmaker system to information concerning earnings, the formulas applied to each Pairing, and total credits for each Pairing and Bid Period. Reid 83:18-84:1, 159:19-24, 171:13-172:1; Garcia 30(b)(6) 146:13-19; Killeen Decl., Ex. L. As such, Plaintiffs could promptly and easily determine from their wage statement the amounts they earned, the amount of credits they received under each pay category (*e.g.*, Regular Pay, Inflight Coach, Premium Pay, etc.), and their applicable pay rates for each hour worked.

Nonetheless, Plaintiffs demand that JetBlue transcribe the credits generated for each individual Pairing within a pay period, and the total compensation corresponding to those credits, into hourly increments and rates directly tied to their total hours on duty. Any resulting wage statement, however, would not accurately reflect the manner in which the Plaintiffs were paid during that pay period under JetBlue's credit-based system.

### D. <u>Plaintiffs Have Not Established That They Were Eligible For Daily Overtime On Any Of The Identified 32 Days.</u>

Plaintiffs' overtime claim is based entirely on their assumption that time worked in the federally-regulated airspace over California on intra-California flights should be included as time worked within California. Indeed, Plaintiffs have not identified a single day when they worked more than eight hours in California without flying. Estevez Decl., Ex. A at 5-6. Nonetheless,

---

Dkt. No. 48 at 10-11. Specifically, Reid was credited with 5 hours, 46 minutes at her Flight Pay Rate of $21 for total compensation for that 9 hour, 3 minute Duty Period of $121.10. *Id.*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

1   even if the Court accepts Plaintiffs' assumption as true, Plaintiffs still have failed to meet *their*

2   burden to demonstrate that they worked within California more than eight hours in a day.

3          For instance, during Turns, Plaintiffs were not required to stay on the plane, did not have

4   any job duties, and generally were free to do whatever they wanted, such as eat, shop, or watch a

5   movie.  Reid 194:18-195:7; Booher 261:14-262:9; Garcia 30(b)(6) 52:17-19, 55:12-23.  They

6   needed only to report to the gate 45 minutes before the next flight's departure time.  Garcia

7   30(b)(6) 54:4-10, 61:8-14.  Pursuant to IWC Wage Order 9, if an employee receives a duty-free

8   meal period – which Plaintiffs could have taken during lengthier Turns – such time is not

9   considered time worked and therefore should be excluded from any daily overtime calculation.

10  *See* IWC Wage Order 9-2001 §§ 3(A)(1), 11(C).  For example, on January 5, 2012, Booher was

11  considered on duty pursuant to FAA regulations for 8 hours, 22 minutes.  Killeen Decl., Ex. I at

12  JB008932.  That Duty Period also included a 2 hour, 33 minute turn at LGB.  *Id.*  Assuming that

13  Booher arrived 45 minutes before boarding for the subsequent flight, the deplaning process for

14  the initial flight would have needed to last 1 hour, 28 minutes for him to remain eligible for daily

15  overtime (*i.e.*, 8:22 of Duty time – 2:33 of Turn time + 0:45 for pre-boarding + 1:28 for deplaning

16  = 8:01 of adjusted Duty time).  Plaintiffs submitted no evidence that deplaning for that initial

17  flight took any longer than the anticipated 15 minutes.  Thus, Booher was not working for over an

18  hour between flights, reducing his total hours within California to less than eight hours that day.[27]

19         In addition, as this Court previously recognized, further complicating any argument that

20  Plaintiffs were working in California when they flew through federal airspace over California is

21  that California contains numerous military bases, national forests and parks classified as federal

22  enclaves.  The federal government exercises exclusive legislative jurisdiction over those federal

23  enclaves where federal law, not state law, applies.  *Taylor v. Lockheed Martin Corp.*, 78 Cal.

24  App. 4th 472, 478 (2000); *see Mersnick v. USProtect Corp.*, 2006 WL 3734396 (N.D. Cal. Dec.

25  18, 2006) (dismissing overtime claim under California law because Vandenberg Air Force Base is

26  a federal enclave governed by the FLSA).  Accordingly, any flight time above those federal

27

28

[27] That day also included a 1 hour, 23 minute deadhead flight.  *Id.*  FAs are not working when
they deadhead (Garcia Ind. 97:22-98:5), and thus the deadhead time also should be excluded.

1    enclaves should be considered time worked within the federal jurisdiction, not California.

2         Plaintiffs seek to impose their burden of proof upon JetBlue because JetBlue's flight

3    records do not contain data reflecting the exact geographical location of every flight that Plaintiffs

4    worked with a contemporaneous time stamp as the flight travelled through the federal airspace.[28]

5    However, unlike the cases Plaintiffs cite, there is no dispute that JetBlue tracked the hours

6    Plaintiffs worked or that JetBlue's CrewTrac reports identified the amount of time Plaintiffs were

7    on duty, including each intervening event (*e.g.*, departures, arrivals, delays, Turns, etc.),[29] thereby

8    allowing Plaintiffs to determine when they were working within California.  *Compare Anderson*

9    *v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 689 (1946) (recognizing that "time clocks do not

10   necessarily record the actual time worked by employees and finding that "the evidence fails to

11   indicate that the time clock records did…mirror the working time"); *Brock v. Seto*, 790 F.2d

12   1446, 1448 (9th Cir. 1986) (finding that it was undisputed that defendant did not record overtime

13   hours and wages as the FLSA required); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157,

14   1188 (2008) (defendant admitted that it had no records or data establishing which class members

15   worked on certain projects during the class period); *Hernandez v. Mendoza*, 199 Cal. App. 3d

16   721, 727 (1988) (shifting the burden to the defendants to show the precise amount of work

17   performed, because the defendants' time records during the disputed period were false).

18        There also is no dispute that those records accurately reflected the hours Plaintiffs worked.

19   JetBlue's records are neither "inaccurate" nor "inadequate."  Dkt. No. 60 at 9.  Those records

20   permitted Plaintiffs to identify the 32 days in which they purportedly worked more than eight

21   hours in California.  However, Plaintiffs have failed to meet their burden, because they have not

22   proven that they worked more than eight hours in a day in California.  *See Anderson*, 328 U.S. at

23

24   _____

[28] JetBlue produced available records for similar, recent intra-California flights showing the
25   scheduled paths for those flights, including paths that match prior testimony in this case, such as
testimony that flights from San Francisco or Oakland to LGB primarily flew over the Pacific
26   Ocean.  Rahman Decl., ¶ 11.  Such evidence confirms that certain intra-California flights operate
within airspace that is not over California, thereby negating any inference that Plaintiffs worked
27   within California on the 32 days at issue for the alleged amount of time.
[29] JetBlue produced records for Plaintiffs' flights showing the exact times that each flight took off
28   from and/or landed at a California airport.  Killeen Decl., ¶ 9; Rahman 71:13-19, 73:2-12.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW

678 (finding that the burden shifts to the employer when "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated").[30]

### E.   Plaintiffs' Waiting Time Penalties, Unfair Competition Law and PAGA Claims Lack Merit.

Plaintiffs' Third, Fifth and Sixth claims, under California Labor Code sections 201-203, California's Unfair Competition Law (Business & Professions Code sections 17200 *et seq.* ("UCL")), and PAGA, are derived entirely from Plaintiffs' underlying wage statement and overtime claims.  Because the predicate claims fail, so too do the derivative waiting time, UCL and PAGA claims.  *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089-90 (2007) (granting summary judgment in defendant employer's favor on the plaintiff's UCL claim when that claim was derived from the plaintiff's failed meal and rest break claims).

## IV.   <u>CONCLUSION</u>

For the reasons stated above, JetBlue's cross-motion should be granted, Plaintiffs' cross-motion should be denied, and Plaintiffs' remaining claims should be dismissed with prejudice.

Dated:  March 17, 2017                              MORGAN, LEWIS & BOCKIUS LLP


                                                    By  */s/ Daryl S. Landy*
                                                    Daryl S. Landy
                                                    Brendan T. Killeen
                                                    Anna Kim
                                                    Attorneys for Defendant
                                                    JETBLUE AIRWAYS CORPORATION

---

[30] Plaintiffs also admit that they were credited at their Premium Pay Rate for at least seven Pairings during which they purportedly worked more than eight hours within California.  Dkt. No. 60-18.  Plaintiffs' Premium Pay Rates were equal to one-and-one-half times their Flight Pay Rates and were the equivalent of an overtime rate.  As this Court previously held that JetBlue's compensation system ensures that Plaintiffs are paid for all hours worked, JetBlue's application of the Premium Pay Rate to the credits Plaintiffs received on the days in question should similarly satisfy JetBlue's obligations under California's overtime law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

25

MEMO OF P'S & A'S ISO MTN FOR SJ
CASE NO. 4:15-CV-01203-JSW