# Exhibit M

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV15-7985 PSG (MRWx) | Date | March 15, 2017 |
|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**   Order GRANTING Defendant's Motion for Summary Judgment and DENYING Plaintiffs' Motion for Summary Judgment

Before the Court are Defendant United Airlines, Inc.'s motion for summary judgement and Plaintiff Felicia Vidrio *et al.*'s motion for summary judgment or in the alternative, motion for partial summary judgment. Dkts. # 34, 41. The Court finds the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing, and reply papers, the Court GRANTS Defendant's motion and DENIES Plaintiffs' motion.

I.   Background

Plaintiffs Felicia Vidrio ("Vidrio") and Paul Bradley ("Bradley") (together, "Plaintiffs") reside in Los Angeles, California and are employed by Defendant United Airlines, Inc. ("United") as flight attendants. Dkt. # 24, *Amended Consolidated Complaint* ("Compl.") ¶¶ 7, 20. On August 6, 2015, Vidrio and Bradley filed separate actions against United in Los Angeles Superior Court. Dkt. # 1, *Notice of Removal* ("NOR") Ex. A; *see also* CV15-7986 PSG (AFMx), Dkt. # 1, Ex. A. United removed both actions to this Court under the Class Action Fairness Act of 2005. *See id.* Pursuant to stipulation of the parties, this Court consolidated the actions on February 22, 2016. *See* Dkt. # 20. Plaintiffs filed their Amended Consolidated Complaint on March 22, 2016. *See* Compl.

In their Complaint, Plaintiffs assert one claim for illegal wage statement penalties under the Private Attorney General Act ("PAGA"), as well as a class action claim for illegal wage statements under California Labor Code Section 226 ("Section 226"). *See id.* Section 226 provides in relevant part:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-7985 PSG (MRWx) | Date | March 15, 2017 |
|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | |

"Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees . . . an accurate itemized statement in writing showing . . . (8) the name and address of the legal entity that is the employer . . . and (9) all applicably hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . ."

Cal. Lab. Code § 226(a)(8)-(9). Plaintiffs allege that United violated Section 226 by providing wage statements that failed to list United's physical address, as well as all applicable hourly rates in effect during the pay period and the corresponding number of hours flight attendants worked at each hourly rate. *Compl.* ¶ 23.

On August 23, 2016, the Court granted Plaintiffs' motion for class certification of the Section 226 claim on behalf of "[a]ll persons who were or are employed by United Airlines Inc. as flight attendants for whom United applied California income tax laws pursuant to 49 U.S.C. 4011(f)(2) at any time from July 6, 2014 up to the present." *See* Dkt. # 32. In its order certifying the proposed class, the Court recognized that the central legal issue in this case is whether Section 226 applies to the challenged wage statements at all, based on whether California law can apply to employees who work primarily outside of California's borders. *Id.* at 11.

United, a major passenger airline serving domestic and international destinations, operates out of eight "mainline" airports in California.[1] *Declaration of Pat Oldfield in Support of United's Opposition to Plaintiff's MSJ* ("Oldfield Decl.") ¶ 2. Because comparatively few flights both start and end in California, class members spend only a small percentage of their time working within California's borders. Dkt. # 34–3, *Declaration of Mark Kilayko in Support of United's MSJ* ("Kilayko Decl.") ¶¶ 8, 9; Dkt. # 40–1, *Plaintiffs' Response to United's Separate Statement of Undisputed Facts* ("PRUS") ¶ 1–6. In fact, it is undisputed that class members spent 83.18 percent of their time working outside of California in 2015, and 82.83 percent of their time working outside of California in 2016. Dkt. # 45–4, *Updated Declaration of Mark Kilayko in Support of United's Opposition to Plaintiff's MSJ* ("Updated Kilayko Decl.") ¶ 5. Some class members log a small percentage of time in California each month, some log time in California only sporadically, and some do not work in California at all. *PRUS* ¶¶ 7, 13;

---

[1] A "mainline" airport is one with at least 150 United arrivals per year, excluding United Express flights (which are operated by regional companies and not by United): San Francisco International Airport ("SFO"); (2) Los Angeles International Airport ("LAX"); (3) San Diego International Airport ("SAN"); (4) John Wayne Airport, Orange County ("SNA"); (5) Sacramento International Airport ("SMF"); (6) San Jose International Airport ("SJC"); (7) Palm Springs International Airport ("PSP"); and (8) Ontario California International Airport ("ONT"). *Oldfield Decl.* ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-7985 PSG (MRWx) | Date | March 15, 2017 |
|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | |

*Kilayko Decl.* ¶ 11a–e. It is further undisputed that both Vidrio and Bradley spent approximately 80 percent of their time working outside of California in 2015 and 2016. *PRUS* ¶¶ 8–9; *Kilayko Decl.* ¶¶ 11a–c, 14.

In 2016, United operated 227,340 flights in and out of the mainline California airports, which constitutes 18.34 percent of United's domestic flights and 15.96 percent of its total flights (including international). *Oldfield Decl.* ¶ 3. Despite United's large presence at LAX and SFO,[2] United's services in California represent less than 20 percent of its domestic and worldwide services. *Oldfield Decl.* ¶ 3–5. United is headquartered in Chicago, Illinois, and has a significant management and administrative presence in Houston, Texas. *Declaration of Sang Sanford in Support of United's Opposition to Plaintiff's MSJ* ("Sanford Decl.") ¶ 4.

On November 8, 2016, United filed a motion for summary judgment. Dkt. # 34 ("United Mot."). On January 19, 2017, Plaintiffs filed their own motion for summary judgment, or in the alternative, partial summary judgment. Dkt. # 41 ("Vidrio Mot."). Both motions are now before the Court.

II.     Legal Standard

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by

---

[2] Plaintiffs indicate that United, together with United Express, operate more than 400 daily flights out of LAX and SFO. *See* Dkt. #40–2, *Declaration of Kirk D. Hanson in Support of Plaintiffs' Opposition to United's MSJ* ("Hanson Decl."), Exs. F, G. By comparison in terms of number of flights and passengers, however, United has significantly larger operations at each Chicago O'Hare International Airport, George Bush International Airport, and Newark Liberty International Airport, than any airport in California. *Oldfield Decl.* ¶¶ 5–6.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-7985 PSG (MRWx) | Date | March 15, 2017 |
|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | |

affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III. Discussion

United moves for summary judgment on grounds that Section 226 does not apply to Plaintiffs' claims because Plaintiffs and the class members performed the majority of their work outside of California.[3] *United Mot.* 1, 11–15. United argues that Section 226, like all other California wage and hour laws, only governs work that is performed exclusively or principally in California, and therefore, applying Section 226 to the class members' claims would violate the presumption against extraterritorial application of California law. *Id.*

State statutes are presumed not to have extraterritorial effect. *See North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("Ordinarily the statutes of a state have no force beyond its boundaries."). As the California Supreme Court has explained, the California legislature "did not intend a statute to be operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter, or history." *Id.* at 4; *see also Sullivan v. Oracle*, 51 Cal. 4th 1191, 1207 (2011).

As to California's wage and hour laws, the California Supreme Court has not expressly decided whether the language or purpose of the California Labor Code impliedly suggests an intent to apply those laws to events occurring outside the state. *See Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 898 (C.D. Cal. 2009) ("There is no "clear express[ion]" of extraterritorial application for California wage and hour laws."). And, until very recently, no

---

[3] United additionally argues that Plaintiffs' claims fail as matter of law because application of Section 226 in this instance violates the Dormant Commerce Clause; Plaintiffs' claims are preempted by the Railway labor Act, 45 U.S.C. §§ 151 *et seq.*, and the Airline Deregulation Act, 49 U.S.C. § 41713; and because, even if applicable, United complied with the requirements of Section 226. *See United Mot.* 1–3. Because the Court finds that Section 226 does not apply to Plaintiffs' claims, the Court need not reach the merits of United's remaining arguments.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-7985 PSG (MRWx) | | Date | March 15, 2017 |
|---|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | | |

court has directly addressed whether Section 226 applies to wage statements issued to California residents who work primarily outside of California. *See Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 WL 3906077 (N.D. Cal. July 19, 2016). Moreover, neither the California Supreme Court nor the Ninth Circuit have established a clear test for determining when a provision of the California Labor Code applies to work performed outside of California, and the jurisprudence on the issue is sparse. However, the few decisions that do discuss the extraterritorial application of California's wage and hour laws tend to focus on the "job situs," namely, the location where the work is principally performed.

For example, in *Tidewater Marine Western, Inc. v. Bradshaw*, the California Supreme Court addressed whether the Industrial Welfare Commission ("IWC") wage orders applied to California residents who worked for California employers on boats in the Santa Barbara channel. *Tidewater*, 14 Cal. 4th 557 (1996). Although the Court did not directly address the extraterritorial application of IWC wage orders, the Court did emphasize that "California's territorial boundaries are relevant to determining whether IWC wage orders apply." *Id*. at 578. The Court then further explained that an employee may be understood to be a "wage earner of California," and therefore subject to the state's wage orders, if the "employee resides in California, receives pay in California, and works exclusively, or principally, in California." *Id*.

In a later decision, *Sullivan v. Oracle Corp.*, the California Supreme Court considered whether California overtime provisions apply to non-resident plaintiffs who spent full days or weeks working in California for a California-based employer. *Sullivan*, 51 Cal. 4th 1191 (2011). Focusing primarily on the location of the work, rather than the residency of the parties, the Court held that the California Labor Code applies to overtime work "performed in California," *id*. at 1206, and noted California's strong interest in enforcing overtime laws for work performed within its borders without regard to the employee's or employer's residence, *id*. at 1198. Notably, the Court rejected the defendants' argument that, based on the holding in *Tidewater*, California overtime laws follow California residents throughout the United States. *Id*. at 1198. To the contrary, the Court emphasized that the language in *Tidewater* "intended to caution against overly broad conclusions about the extraterritorial application of employment laws," and merely foresaw, as a possibility, limited extraterritorial application, "such as when California residents working for a California employer travel temporarily outside the state during the course of the normal workday but return to California at the end of the day." *Id*. at 1199 (citing *Tidewater*, 14 Cal. 4th at 578).

Other courts in California have also concluded that the location of the work is determinative when evaluating whether California's wage and hour laws apply to a plaintiff's claims. *See, e.g.*, *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1062 (N.D. Cal. 2014) ("California's wage and hour laws do not apply to work performed primarily outside of California."); *Aguilar*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-7985 PSG (MRWx) | Date | March 15, 2017 |
|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | |

*v. Zep Inc.*, No. 13–CV–00563–WHO, 2014 WL 4245988, at *12 (N.D. Cal. Aug. 27, 2014) ("[T]he critical factor is where the work at issue is performed by the plaintiff."); *Campagna v. Language Line Servs., Inc.*, No. 5:08–CV–02488–EJD, 2012 WL 1565229, at * 3 (N.D. Cal. May 2, 2012) ("None of the cases read California wage and hour laws to cover out-of-state work performed by nonresidents who primarily work outside California."); *Priyanto v. M/S AMSTERDAM*, No. CV 07–3811–AHM–JTLX, 2009 WL 175739, at *8 (C.D. Cal. Jan. 23, 2009) ("Plaintiffs cannot show that they work in the state of California, and consequentially cannot show that . . . the California wage and hour laws can be applied to them without violating the presumption against extraterritoriality."); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 900 (C.D. Cal. 2009) (holding that the presumption against extraterritorial application of California's wage and hour laws barred a California resident's claims against his California employer because he "indisputably spent the vast majority of his employment working *outside* of California.") (emphasis in original).

It is against this background that three recent district court decisions considered whether California-resident pilots and flight attendants may bring claims under California's wage and hour laws when most of the work is performed outside of the state.

The first case to address the issue, *Ward v. United Airlines, Inc.*, is factually nearly identical to the present case. *Ward*, 2016 WL 3906077. In *Ward*, California-resident pilots who received wage statements in California, but spent an average of 88 percent of their work outside of California, sued United under various provisions of Section 226. *Id.* at *3. Recognizing that no case had directly addressed the applicability of Section 226 to California residents who performed most of their work outside the state, the Court noted that the few decisions that evaluated whether California's wage, hour and work-place discrimination laws apply extraterritorially focused on the "job situs test," which considers where the employee "principally" worked. *Id.* (citing *Anderson v. CRST Int'l, Inc.*, 2015 WL 1487074 (C.D. Cal. Apr. 1, 2015); *Priyanto*, 2009 WL 175739; *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 478 (2000); and *Tidewater*, 14 Cal. 4th 557). In light of such precedent, the Court granted summary judgment in favor of United, concluding that "for class members who worked primarily outside of California, Section 226 — like the rest of California's labor laws — does not apply." *Id.* at *5.

As in *Ward*, it is undisputed that Plaintiffs and the class members worked primarily outside of California, thus precluding the application of Section 226 to their claims. Despite this direct and instructive precedent, however, Plaintiffs urge the Court to reject the job situs test and adopt a multi-factor approach consistent with the recent ruling in *Bernstein v. Virgin Am., Inc.* See Dkt. # 40 ("Opp.") at 8–10. In *Bernstein*, California-resident flight attendants employed by Virgin America, Inc. ("Virgin") brought a class action suit alleging numerous wage and hour

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-7985 PSG (MRWx) | Date | March 15, 2017 |
|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | |

violations, including failure to provide accurate wage statements. *Bernstein*, No. 15-CV-02277-JST, 2017 WL 57307, *1 (N.D. Cal. Jan. 5, 2017). In concluding that plaintiffs were not barred from asserting claims under California's wage and hour laws, the Court rejected the job situs test, and instead fashioned a multi-factor approach based on its interpretation of California Supreme Court precedent. *Id*. at *4–5. Specifically, the *Bernstein* Court relied on *Tidewater* and *Sullivan* to conclude that the California Supreme Court has left open the possibility that California employment laws might apply in this case where California residents working for a California employer temporarily leave "the state during the course of the normal workday, but return to California at the end of the day." *Id*. at *5; s*ee Sullivan*, 51 Cal. 4th at 1199; *Tidewater*, 14 Cal. 4th at 578. First, that plaintiffs were California residents who received their pay in California satisfied two of the three elements to presumptively enjoy the protections of California law under *Tidewater*. *Id*. at *5. Then, relying on *Sullivan* for the proposition that the employer's residency is relevant to the application of California law, the Court gave substantial weight to the fact that Virgin is based in California, has its headquarters in California, received substantial state subsidies to train its flight attendants in California, between 88 and 99 percent of its daily flights departed from or arrived at a California airport, and the wrongful conduct giving rise to liability – *i.e.* the decisions regarding employee compensation policies – occurred in California. *Id*. *4–8. Although plaintiffs spent only 25 percent of their work time in California, the Court did not find this determinative in light of the other considerations. *Id*. at *5.

     Even under the multi-factor approach, however, the facts in this case are sufficiently distinguishable to render a contrary outcome. In stark contrast to Virgin, United is neither based nor has its headquarters in California. It is undisputed that United is headquartered in Chicago, Illinois, and has management and administrative offices in Houston, Texas. *Sanford Decl*. ¶ 4. Thus, any potential liability arising from decisions regarding compensation policies, including the format and content of wage statements, cannot be said to have "emanated" from California. *Cf. Bernstein*, 2017 WL 57307, at *10 ("[T]he challenged compensation policies at issue in this case emanated from Virgin's headquarters in California."). Moreover, while United operates flights out of eight California airports, such traffic constitutes only 18.34 percent of United's domestic flights and 15.96 percent of its total flights. *Oldfield Decl*. ¶ 3. Virgin, by contrast, operates between 88 and 99 percent of its flights in and out of California. *Bernstein*, 2017 WL 57307, at *5. While it then follows that the vast majority of Virgin's flight attendants start and end each workday in California, *see Tidewater*, 14 Cal. 4th at 578, United's California-based flight attendants start and end comparatively few shifts in California and some do not work in California at all. *See PRUS* ¶¶ 7, 13; *Kilayko Decl*. ¶ 11a–e. In sum, United's ties to California are minimal relative to its overall business, and certainly fall short of the "deep ties" between Virgin and California that the *Bernstein* Court found determinative.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-7985 PSG (MRWx) | Date | March 15, 2017 |
|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | |

Therefore, in the absence of this factor, the class members' residency and receipt of wage statements in California is insufficient to obtain the benefits of California wage and hour laws when the work is principally performed outside of the state. *See Shook v. Indian River Transp. Co.*, No. CV 1:14-1415 WBS BAM, 2017 WL 633895, at *6 (E.D. Cal. Feb. 15, 2017) (where plaintiffs did not work exclusively or principally in California, and defendant was not based or headquartered in California, plaintiffs' California residency and receipt of wages in California were insufficient to invoke the benefits of California's wage and hour laws); *Ward*, 2016 WL 3906077, at *3 (rejecting plaintiffs' argument that the pilots' residency and receipt of wage statements in California were dispositive, focusing instead on where the pilots "principally worked"); *Sarviss*, 663 F. Supp. 2d at 900 (holding that California wage orders did not apply to a California resident because he did not principally work in California, noting that "[t]he focus on situs of employment as opposed to residence of the employee or the employer is consistent with the decisions of California state courts."); *Sullivan*, 51 Cal. 4th at 1198 (holding that California's overtime law applies to all work within its borders, regardless of the employee's residency).[4]

The third court to address the issue, *Oman v. Delta Air Lines, Inc.*, considered the multi-factor approach adopted in *Bernstein* but nonetheless concluded that Section 226 did not apply to the wage statements of Delta Air Lines' California-based flight attendants who spent a "de minimis" amount of time working in California. *Oman v. Delta Air Lines, Inc.*, No. 15-CV-00131-WHO, 2017 WL 66838, at *7 (N.D. Cal. Jan. 6, 2017). Noting that "the facts in *Bernstein* are starkly different" from the record before it, the Court held that the application of Section 226 was not permissible because the flight attendants spent 14 percent or less of their time in California, Delta was not based in California, and the nature of the work required working in multiple other jurisdictions in a given pay period or day. *Id.* at *6.

In light of the California state law precedent and the decisions in *Ward*, *Bernstein*, and *Oman*, this Court concludes that Plaintiffs cannot assert their claim for improper wage

---

[4] Nor is the Court persuaded by Plaintiffs' argument that job situs is only relevant when claims for actual unpaid wages are concerned, as opposed to claims for improper wage statements. *Opp.* 5–7. The same argument was rejected by the Court in *Ward*, which held that Section 226 must be subject to the same jurisdictional limits as the wage-and-hour statutes and regulations to which it relates. *See Ward*, 2016 WL 3906077, at *4. Moreover, the principal purpose of Section 226 is to give employees clarity as to how their wages are calculated, so they can verify that their wages are calculated appropriately under California law. *See Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385, 392 (Ct. App. 2016) ("Section 226(a)'s statutory purpose . . . is to document the paid wages to ensure the employee is fully informed regarding the calculation of *those wages*." (emphasis in original)). Therefore, Plaintiffs' argument that their payment of wages need not comply with California law, but that the statements that reflect those wages must, is unavailing, and Plaintiffs point to no authority to support such a proposition.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV15-7985 PSG (MRWx) | Date | March 15, 2017 |
|---|---|---|---|
| Title | Felicia Vidrio, et al. v. United Airlines, Inc. | | |

statements under Section 226. It is undisputed that the class members do not "principally" work in California, where, on average, they performed less than 18 percent of their work in California during the class period. It is further undisputed that United is neither based nor headquartered in California, and its operations in California constitute less than 20 percent of its overall business. Thus, whether the Court applies the job situs test as in *Ward* or adopts a multi-factor approach as in *Bernstein* and *Oman*, the outcome in this case remains the same.

IV.     Conclusion

Based on the foregoing, United's motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment or in the alternative, partial summary judgment is DENIED.

**IT IS SO ORDERED**.