MORGAN, LEWIS & BOCKIUS LLP
Daryl S. Landy (SBN 136288)
daryl.landy@morganlewis.com
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626
Tel:     714.830.0600
Fax:    714.830.0700

MORGAN, LEWIS & BOCKIUS LLP
Anna Kim (SBN 292082)
anna.kim@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:     213.612.2500
Fax:    213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Brendan T. Killeen (admitted *pro hac vice*)
brendan.killeen@morganlewis.com
101 Park Avenue
New York, New York 10178
Telephone: 212-309-6000
Facsimile:  212-309-6001

Attorneys for Defendant
JETBLUE AIRWAYS CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Booher and Patricia Reid, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>JetBlue Airways Corporation,<br><br>Defendant. | Case No. 4:15-cv-01203-JSW<br><br>**DEFENDANT JETBLUE AIRWAYS CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         May 19, 2017<br>Time:         9:00 a.m.<br>Courtroom:  5, 2nd Floor<br>Judge:        Hon. Jeffrey S. White |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     SECTION 226 DOES NOT APPLY TO PLAINTIFFS BECAUSE THEY
        PRINCIPALLY WORKED OUTSIDE OF CALIFORNIA............................................ 2

III.    SECTION 510 DOES NOT APPLY TO PLAINTIFFS BECAUSE THEY DID
        NOT WORK MORE THAN EIGHT HOURS IN A DAY IN CALIFORNIA................. 7

IV.     REQUIRING JETBLUE TO COMPLY WITH SECTION 226 WOULD
        VIOLATE THE DORMANT COMMERCE CLAUSE. ................................................ 8

V.      APPLYING THE CALIFORNIA LABOR CODE'S DAILY OVERTIME
        REQUIREMENTS TO FA'S PLACES AN UNDUE BURDEN ON JETBLUE. ........... 11

VI.     JETBLUE'S WAGE STATEMENTS ACCURATELY REFLECTED
        JETBLUE'S CALIFORNIA-COMPLIANT COMPENSATION SYSTEM. ................. 13

VII.    PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY WERE WORKING
        THROUGHOUT THE TIME THEY WERE CONSIDERED ON DUTY. ..................... 14

VIII.   PLAINTIFFS' WAITING TIME PENALTIES, UNFAIR COMPETITION LAW
        AND PAGA CLAIMS LACK MERIT. ...................................................................... 15

IX.     CONCLUSION ........................................................................................................ 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abogados v. AT&T, Inc.*
 223 F.3d 932 (9th Cir. 2000)...................................................................................15

*Anderson v. Mt. Clemens Pottery Co.*
 328 U.S. 680 (1946) ..............................................................................................14

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*
 476 U.S. 573 (1986) ..............................................................................................10

*Campagna v. Language Line Servs., Inc.*
 2012 WL 1565229 (N.D. Cal. May 2, 2012) ...........................................................6

*Cotter v. Lyft, Inc.*
 60 F. Supp. 3d 1059 (N.D. Cal. 2014) .....................................................................6

*Edgar v. MITE Corp.*
 457 U.S. 624 (1982)................................................................................................9

*Hirst v. SkyWest Airlines, Inc.*
 2016 WL 2986978 (N.D. Ill. May 24, 2016) ..............................................8, 11, 12

*Lopez v. Aerotek, Inc.*
 2015 WL 4504691 (C.D. Cal. July 23, 2015) ..........................................................3

*Oman v. Delta Air Lines, Inc.*
 153 F. Supp. 3d 1094, 1095 (N.D. Cal. 2015) .......................................................13

*Oman v. Delta Air Lines, Inc.*
 2016 WL 66838 (N.D. Cal. Jan. 6, 2017) ...................................................... .passim

*Rocky Mountain Farmers Union v. Corey*
 730 F.3d 1070 (9th Cir. 2013)................................................................................11

*Rodriguez v. Old Dominion Freight Line, Inc.*
 2013 WL 6184432 (C.D. Cal. Nov. 27, 2013)..........................................................3

*Sam Francis Found. v. Christies, Inc.*
 784 F.3d 1320 (9th Cir. 2015).............................................................................9, 10

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*
 633 F. Supp. 2d 883 (C.D. Cal. 2009)......................................................................6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

*Shook v. Indian River Transport Co.*
    2017 WL 633895 (E.D. Cal. Feb. 15, 2017) ........................................................v, 2, 6

*Skysign Intern., Inc. v. City & Cty. of Honolulu*
    276 F.3d 1109 (9th Cir. 2002) .................................................................................7

*Sullivan v. Oracle Corp.*
    663 F.3d 1265 (9th Cir. 2011) .............................................................................5, 11

*U.S. v. Alexander*
    106 F.3d 874 (9th Cir. 1997) ....................................................................................8

*Vidrio v. United Airlines, Inc.*
    2017 WL 1034200 (C.D. Cal. Mar. 15, 2017) ..................................................v, 2, 6

*Ward v. United Airlines, Inc.*
    2016 WL 3906077 (N.D. Cal. July 19, 2016) .................................................. *passim*

CALIFORNIA CASES

*Sullivan v. Oracle Corp.*
    51 Cal. 4th 1191 (2011) .............................................................................1, 4, 5, 7, 12

*Taylor v. Lockheed Martin Corp.*
    78 Cal. App. 4th 472 (2000) ....................................................................................7

OTHER CASES

*Booher v. JetBlue Airways Corp.*
    2016 WL 1642929 (N.D. Cal. Apr. 26, 2016) ..................................................8, 13

FEDERAL STATUTES

29 U.S.C. § 218 .................................................................................................................7

49 U.S.C. § 40103(a) ...................................................................................................7, 8

CALIFORNIA STATUTES

Bus. & Prof. Code § 17200 . ........................................................................................15

Cal. Lab. Code §§ 201-203 ..........................................................................................15

Cal. Lab. Code § 226.......................................................................................... *passim*

Cal. Lab. Code § 510.......................................................................................... *passim*

OTHER AUTHORITIES

14 C.F.R. § 120.37(d)(1)...............................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

14 C.F.R. § 121.467(a) .............................................................................................................. 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

1

## SUMMARY OF ARGUMENT PURSUANT TO CIVIL STANDING ORDER ¶ 7

2      In the past nine months, four different District Court judges in California have found that

3  California Labor Code section 226 ("Section 226") does not apply extraterritorially to the work

4  Flight Attendants ("FAs") and other similar, mobile workforces performed.  *Oman v. Delta Air*

5  *Lines, Inc.*, 2016 WL 66838 (N.D. Cal. Jan. 6, 2017); *Ward v. United Airlines, Inc.*, 2016 WL

6  3906077 (N.D. Cal. July 19, 2016); *Vidrio v. United Airlines, Inc.*, 2017 WL 1034200 (C.D. Cal.

7  Mar. 15, 2017); *Shook v. Indian River Transport Co.*, 2017 WL 633895 (E.D. Cal. Feb. 15,

8  2017).  There is no dispute that Plaintiffs did not principally work in California throughout their

9  employment, or that Defendant JetBlue Airways Corporation ("JetBlue") lacks the necessary

10  connections to California to justify Section 226's extraterritorial application.  Accordingly, just as

11  the other District Court judges found, this Court should grant JetBlue's summary judgment

12  motion because there is no basis to apply Section 226's procedural protections to FAs.

13      Plaintiffs' theories would also require the improper, extraterritorial application of

14  California's overtime law, because there is no dispute that Plaintiffs did not work more than eight

15  hours in a day on the ground in California.  California has no sovereignty over FAs traveling in

16  the skies above it and, thus, California's wage and hour laws should not have followed Plaintiffs

17  as they worked in the federal airspace.  Plaintiffs also have not established that they were working

18  throughout the time they were considered on duty for Federal Aviation Administration purposes

19  and thus cannot prove they have in fact worked more than eight hours in a day in California.

20      Plaintiffs' Section 226 and overtime claims also should be dismissed because applying

21  those laws to JetBlue's FA workforce would violate the Dormant Commerce Clause.  Permitting

22  California to regulate conduct occurring wholly outside of the state simply because Plaintiffs

23  touched California would place an undue burden on interstate commerce and improperly project

24  California law into other states.  Moreover, requiring JetBlue to monitor the exact time and

25  location of each FA's individual flights to determine which state's laws apply and how would

26  create an excessive burden that vastly outweighs the putative local benefits.

27      Accordingly, JetBlue respectfully requests that Plaintiffs' Second through Sixth Claims

28  for Relief be dismissed as a matter of law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

I.      **INTRODUCTION**

In their continuing effort to persuade this Court to impermissibly and unconstitutionally apply California Labor Code section 226 ("Section 226") to JetBlue's mobile Flight Attendant ("FA") workforce, Plaintiffs in their Opposition again rely on mischaracterizations of JetBlue's arguments and base their own assertions on fundamental misinterpretations and improper expansions of the law.  However, Plaintiffs cannot evade that in the past nine months, three separate District Court judges in California have held that Section 226 does not apply to FAs and pilots, while a fourth held that the law does not apply to truck drivers engaged in interstate commerce.  Nor can they dispute that Plaintiffs principally worked outside of California throughout their employment or that JetBlue lacks "deep ties" to California.

Plaintiffs invite this Court to disregard those decisions and improperly expand the California Supreme Court's limited holding in *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) ("*Sullivan I*") beyond California's overtime provisions to find that Plaintiffs' performance of *any* work within California availed them to all of the protections, rights and remedies available under California law.  Plaintiffs' overbroad reading of *Sullivan I* cannot save their claim.  *Sullivan I* confirms that the District Court judges referenced above properly analyzed the plaintiffs' principal job site when determining whether the California Labor Code applied to them.  This Court should follow this approach to find that Plaintiffs cannot rebut the presumption against the Labor Code's extraterritorial application and that Section 226 should not apply to Plaintiffs.

Plaintiffs similarly have failed to refute that applying Section 226 or California's overtime laws to JetBlue's mobile FA workforce would violate the Dormant Commerce Clause.  To the contrary, their arguments – including those contrasting Reid from Booher – only underscore the far-reaching and unconstitutional implications if Plaintiffs' theories governed California law's application.  That law may not dictate JetBlue's nationwide practices or supersede the competing and conflicting laws of the other states in which Plaintiffs worked.  Nor may it require JetBlue to monitor the exact time and location of each FA's individual flights in real-time to determine which state's laws apply and how, creating an undue burden that vastly outweighs the putative local benefits.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

Even if California daily overtime laws applied – and they do not – Plaintiffs have not established that they worked more than eight hours in a day in California.  On each day for which Plaintiffs seek to recover daily overtime, Plaintiffs indisputably worked in the federal airspace.  Neither California Labor Code section 510 ("Section 510") nor the Industrial Welfare Commission ("IWC") Wage Order apply extraterritorially to that time.  Moreover, Plaintiffs have not met their burden of proof that they were working throughout those days while on duty.

For the reasons set forth below and in JetBlue's opening brief, JetBlue respectfully requests that Plaintiffs' Second through Sixth Claims for Relief be dismissed as a matter of law.

## II.    SECTION 226 DOES NOT APPLY TO PLAINTIFFS BECAUSE THEY PRINCIPALLY WORKED OUTSIDE OF CALIFORNIA.

In the past nine months, three different District Court judges in California, including two in this District, have found that Section 226 cannot be applied extraterritorially to the work out-of-state airlines' FAs and Pilots performed, while a fourth judge similarly held that Section 226 did not apply to truck drivers engaged in interstate commerce.  Whether those judges analyzed the plaintiffs' work on a pay period by pay period basis or over an extended period of time, the results were the same – Section 226 does not apply, because the plaintiffs did not principally work in California.  *Oman v. Delta Air Lines, Inc.*, 2016 WL 66838, at *6 (N.D. Cal. Jan. 6, 2017) ("there is no basis to apply Section 226's procedural protections" to FAs because, in part, the plaintiffs only worked as much as 14 percent of their time in California); *Ward v. United Airlines, Inc.*, 2016 WL 3906077, at *5 (N.D. Cal. July 19, 2016) (holding that Section 226 did not cover pilots, including the California-based and resident plaintiff, who worked as much as 42 percent of their time *within a given pay period* in California); *Vidrio v. United Airlines, Inc.*, 2017 WL 1034200, at *6 (C.D. Cal. Mar. 15, 2017) (holding that Section 226 did not apply to FAs who spent approximately 80 percent of their time working outside of California); *Shook v. Indian River Transport Co.*, 2017 WL 633895, at *5 (E.D. Cal. Feb. 15, 2017) (holding that California-resident truck drivers whose routes began or ended in California, some of whom spent nearly half their work time *in particular pay periods* in California, did not principally work in California because they spent the majority of their time working outside California).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

Here, there is no dispute that during the relevant time period – August 31, 2014 through her termination and addition to this case in the First Amended Complaint a year later[1] – Reid worked 75.6 percent of her hours outside of California and worked in non-California airports on 80.4 percent of her workdays. Dkt. 63-20 at 6.[2]  While Plaintiffs criticize JetBlue's analysis for its focus on the statutory period for Reid's Section 226 claim, they do not provide an analysis of Reid's work hours for any other allegedly appropriate timeframe beyond a single pay period.[3] Moreover, Plaintiffs do not dispute or address that under the longest statute of limitations period available to Booher under any claim, he spent 83.2 percent of his hours working outside of California and worked in airports outside of California on 90 percent of his workdays.  *Id.* Instead, Plaintiffs ask this Court to focus on single days and two individual pay periods for Reid only in which she purportedly worked solely in California, and find that those days and pay periods required JetBlue to treat Plaintiffs' entire employment as if it occurred in California regardless of where they actually worked.  However, no matter the timeframe, the results are still the same:  Section 226 cannot be applied extraterritorially and should not apply to Plaintiffs

[1] To obtain a three-year statute of limitations period under Section 226(e), Plaintiffs were required to plead their request for "actual damages" with specificity. *Lopez v. Aerotek, Inc.*, 2015 WL 4504691, at *3, n. 4 (C.D. Cal. July 23, 2015).  They have not.  Plaintiffs' operative Second Amended Complaint, like the two previous versions of the Complaint, on its face demands solely "Wage Time ***Penalties*** (Cal. Lab. Code § 226)."  Dkt. 34 at 1 (emphasis added).  Plaintiffs' demand for purported lost wages under the California minimum wage and overtime laws under separate California Labor Code provisions does not trigger the extended statute of limitations period for their Section 226 penalties claim. *Rodriguez v. Old Dominion Freight Line, Inc.*, 2013 WL 6184432, at *6 (C.D. Cal. Nov. 27, 2013).  Notably, Plaintiffs do not contend that Booher (or Reid) plead or sought recovery for actual damages under Section 226(e) in the Complaint.  Dkt. 65 at 19, n.9.  Moreover, even when provided an opportunity to define the scope of their Section 226 damages, Plaintiffs limit it to penalties.  Dkt. 65 at 28 ("JetBlue's objection to reporting Plaintiffs' hours worked and rates of pay confirms its liability for ***statutory penalties***….JetBlue failed to provide the required information, and this protracted litigation is the result.  JetBlue is liable for ***penalties*** under Section 226(e).") (emphases added).  Accordingly, a one-year statute of limitations period should apply under Code of Civil Procedures section 340 to Reid's Section 226 claim and Booher's Section 226 claim should be time-barred and dismissed.

[2] All page citations to docket entries are to the ECF filed page.

[3] Plaintiffs also do not dispute that if Reid's claim tied back to the date Booher filed the initial Complaint – March 13, 2015 – she still worked outside California 70.9 percent of her hours and worked in airports outside California on 79.3 percent of her workdays between March 13, 2012 and August 31, 2015.  Dkt. 63-20 at 6.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

1    because they did not principally work in California.

2            Despite asking the Court to limit its focus to individual pay periods, Plaintiffs ignore the

3    pay period example JetBlue provided.  From September 1 through 15, 2014, Reid worked 52.4

4    hours, of which she worked 9.9 hours in Washington and 8.7 hours in California.[4]  Dkt. 63 at 18,

5    n. 11.  Applying California law to the entire pay period simply because Reid worked some time in

6    California would be an improper, extraterritorial application.  Not only would California law

7    govern the 83.4 percent of Reid's work performed outside the state, but it would also supersede

8    the law of the state, Washington, in which she worked the most (excluding the federal airspace).[5]

9            Plaintiffs cannot rebut the presumption against the extraterritorial application of California

10   law.  Recognizing this, Plaintiffs base their "analysis" of Section 226 on the California Supreme

11   Court's holding in *Sullivan I* regarding the application of California's overtime laws to out-of-

12   state residents who *exclusively* worked more than eight hours in a day in California for a

13   California-based employer.  51 Cal. 4th at 1199.  Plaintiffs implore the Court to apply *Sullivan I*

14   in a way the California Supreme Court never intended to find that Section 226 was triggered

15   whenever Plaintiffs allegedly worked more than eight hours in a single day in California.

16           However, in *Sullivan I*, the California Supreme Court repeatedly noted that its decision

17   regarding Section 510 did not extend to other California Labor Code provisions, and specifically

18   avoided making any decision as to whether California could govern the content of an out-of-state

19

20   [4] This pay period is not the one in which Reid worked the lowest percentage of her hours in
21   California.  For example, from March 16 through 31, 2015, Reid worked 5.97 hours out of 71.98
     hours (8.3%) in California, and from December 16 through 31, 2013, she worked 6.37 hours out
22   of 64.25 hours (9.9%) in California.  Dkt. 63-9 at 59-60, 87-88.  An analysis of Booher's flight
     records provides similar examples of a *de minimis* amount of time working within California,
23   including: (a) 8 hours out of 148.35 hours (5.4%) from May 1 through 31, 2011 (*i.e.*, across two
     pay periods); (b) 3.52 hours out of 59.97 hours (5.9%) from July 1 through 15, 2011; and (c) 5.3
24   hours out of 77.85 hours (6.8%) from April 1 through 15, 2012.  Dkt. 63-10 at 5-10, 24-26.

25   [5] In support of Plaintiffs' argument that the job situs test should not govern overtime coverage,
     they also identify two pay periods outside the Section 226 statute of limitations period in which
26   Reid purportedly worked solely in California, including February 16 through 28, 2013, while
     failing to identify any similar pay period for Booher.  Dkt. 65 at 13-14.  As discussed below, a
27   review of Reid's subsequent pay periods demonstrates the Dormant Commerce Clause
     implications of Plaintiffs' theory.  *See infra* Section IV.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

business's (such as JetBlue's) paystubs.[6]  *Sullivan I*, 51 Cal. 4th at 1201; *Oman*, 2017 WL 66838, at *5.  Indeed, there is nothing in *Sullivan I* or the Ninth Circuit's subsequent decision in *Sullivan v. Oracle Corp.*, 663 F.3d 1265, 1267 (9th Cir. 2011) ("*Sullivan II*"), requiring an employer to provide a Section 226-compliant wage statement whenever any work is performed within California "regardless of where the bulk of [an employee's] work in the relevant pay period is performed." [7] *Oman*, 2017 WL 66838, at *5.

Just as the plaintiffs did in *Oman*, Plaintiffs here ask the Court to read *Sullivan I* far too broadly.  There is nothing incongruous between *Sullivan I* and the recent cases in which District Courts in California have analyzed the plaintiffs' job situs.  *Sullivan I* did not reject or replace the job situs test the California Supreme Court set forth in *Tidewater Marine W. v. Bradshaw* through which the presumption that an employee is a California wage earner applies *only* if the employee "*works exclusively, or principally in California*."  14 Cal. 4th 577, 578 (1996) (emphasis added).  Rather, *Sullivan I* held that employees who *exclusively* worked in California on a day or in a week (*i.e.*, *100 percent* of that day or week) for a California-based employer (Oracle) were eligible for daily and weekly overtime for the day or week in question if they worked the requisite hours.  *Sullivan I*, 51 Cal. 4th at 1200.  That is, Section 510 only covered the *Sullivan* plaintiffs because their "job situs" was California on those days and weeks.

---

[6] In *Aguilar v. Zep Inc.*, Judge Orrick made clear that the "critical factor" for determining whether the California Labor Code applies to an employee is "where the work at issue is performed." 2014 WL 4245988, at *13-14 (N.D. Cal. Aug. 27, 2014).  While Judge Orrick also noted that there was no reason to limit *Sullivan I* to overtime cases, the *Aguilar* decision did not analyze how *Sullivan I* would be applied to claims under Section 226, whether that Section would apply to employees, like Plaintiffs, who work in multiple jurisdictions throughout a given day, week or pay period, and, if so, how.  Moreover, Judge Orrick's recent decision in *Oman*, in which he cited to *Aguilar*, demonstrates that he was unwilling to expand *Sullivan I* to Section 226 when applied to this same population of mobile workers, FAs.  *Oman*, 2017 WL 66838, at **6-7.

[7] For example, Plaintiffs cite May 26, 2014. Dkt. 65 at 18.  On that day, Reid was on duty 9.17 hours, including 1.9 hours in which she was on duty within the federally-regulated airspace.  Dkt. 63-20 at 12.  During that same pay period, Reid also was on duty in Nevada, Oregon and Washington.  Dkt. 63-9 at 69-70.  Nonetheless, Plaintiffs argue that because "Reid worked an 'entire day' in California without overtime.  JetBlue failed to provide her with a compliant paystub for that day."  Dkt. 65 at 18.  Section 226 does not require JetBlue to provide individual wage statements for individual work days or to provide a California-compliant wage statement for the entire pay period simply because Plaintiff purportedly worked an "entire day" in California.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

1    The Courts in *Oman*, *Ward*, *Vidrio* and *Shook* similarly analyzed where the respective

2    plaintiffs principally worked in determining that Section 226 did not apply to their employment

3    either in its entirety or on a pay period by pay period basis.[8]  Even in *Bernstein v. Virgin America,*

4    *Inc.*, Judge Tigar reviewed the percentage of time the plaintiffs worked in California, before

5    discounting it in favor of several factors he felt established Virgin America's "deep ties" to

6    California. [9]  2017 WL 57307, at *5 (N.D. Cal. Jan. 5, 2017).  Regardless of what test this Court

7    applies, where Plaintiffs principally worked is the primary factor, particularly because JetBlue is

8    an out-of-state employer that prepares, issues and applies its FA policies from its New York

9    headquarters and has minimal contacts with California.  Because Plaintiffs cannot identify a

10   single pay period within the statute of limitations period in which Reid (or Booher) principally

11   worked in California, and there is no dispute that after August 31, 2014 Reid principally worked

12   *outside* of California, neither Plaintiffs nor JetBlue have the necessary connections warranting the

13   expansive, extraterritorial application of Section 226 for which Plaintiffs advocate.

14

---

15   [8] As evidenced by *Tidewater* and *Sullivan I*, federal and state courts in California factored an
     employee's principal work site into their analysis long before the *Ward* decision.  *See Aguilar*,

16   2014 WL 4245988, at *13-14; *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1062 n. 1 (N.D. Cal.
     2014) ("[T]he critical factor is where the work at issue is performed, and California's wage and

17   hour laws do not apply to work performed primarily outside of California"); *Campagna v.*
     *Language Line Servs., Inc.*, 2012 WL 1565229, at *3 (N.D. Cal. May 2, 2012) ("None of the

18   cases read California wage and hour laws to cover out-of-state work performed by nonresidents
     who primarily work outside California."); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 633 F.

19   Supp. 2d 883, 899 (C.D. Cal. 2009) (finding that a California resident who spent between eighty
     and ninety percent of his employment working outside of California was not a California wage

20   earner because "the determinative issue is whether an employee principally works in California")
     (*citing Guy v. IASCO*, 2004 WL 1354300 (Cal. Ct. App. June 17, 2004) (unpublished)).  Plaintiffs

21   also mischaracterize the holdings in the recent cases.  For example, *Vidrio* did not conclude only

22   that residency and receipt of wage statements in California was "insufficient to obtain the benefits
     of California wage and hour laws" (Dkt. 65 at 21), but that in the absence of the "deep ties" the

23   court in *Bernstein* found determinative, those factors were insufficient "***when the work is***

24   ***principally performed outside of the state***."  2017 WL 1034200, at *6.

25   [9] Plaintiffs do not ask this Court to rely on *Bernstein* other than for its analysis of the cases on
     which *Ward* relies despite being the *only* case finding that Section 226 applies to California-based

26   and/or resident FAs.  That is because it is undisputed that JetBlue does not share the "deep ties" to

27   California that Judge Tigar found Virgin America had in *Bernstein*.  Plaintiffs do not even feign
     to address the other factors Judge Tigar considered because the evidence confirms that each factor

28   weighs in favor of finding that Section 226 did not apply to Plaintiffs.  *See* Dkt. 63 at 9-10.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

1

**III.     SECTION 510 DOES NOT APPLY TO PLAINTIFFS BECAUSE THEY DID NOT
WORK MORE THAN EIGHT HOURS IN A DAY IN CALIFORNIA.**

2

3          Plaintiffs conflate JetBlue's arguments in their attempt to convince the Court that the job

4   situs test is an impractical analysis for determining Plaintiffs' entitlement to overtime.  However,

5   whether California's overtime law applies to individuals depends on whether they work more

6   than eight hours in a day or more than 40 hours a week *in California*, not whether they principally

7   work in California over a broader period of time.  Dkt. 63 at 21 (citing *Sullivan I*, 51 Cal. 4th at

8   1200).  Plaintiffs' Section 510 claim does not fail because of some purported retroactive

9   application of the job situs test; it fails because Plaintiffs cannot establish that they worked *in*

10  *California* for more than eight hours unless the Court finds that Section 510 applies

11  extraterritorially into the federally-regulated airspace.

12         Plaintiffs do not dispute that on each of the claimed overtime days they worked in the

13  federal airspace.  Instead, they argue that Ninth Circuit precedent permits California to regulate

14  certain conduct within that airspace and that the law of the case doctrine precludes this Court

15  from considering whether that airspace is within California territory.  First, the Ninth Circuit's

16  decision in *Skysign Intern., Inc. v. City & Cty. of Honolulu*, 276 F.3d 1109 (9th Cir. 2002), did

17  not hold that the federal airspace above a state is considered part of that state's territory.  Nor did

18  it hold that any time spent working within the federal airspace above California shall be

19  considered California work time for purposes of Section 510 (or any other California Labor Code

20  provision).  Rather, it held that federal regulations (including 49 U.S.C. § 40103(a)) did not

21  preempt a local, Hawaiian ordinance governing advertising, particularly when the Federal

22  Aviation Administration ("FAA") instructed the Hawaii-based provider of aerial advertising that

23  it would be subject to all local laws and ordinances.  *Id.*  While the Fair Labor Standards Act's

24  ("FLSA") Savings Clause permits states and municipalities to establish more generous overtime

25  laws than the FLSA for employees working within those states and municipalities, it does not

26  permit those states and municipalities to apply those laws to employees working in territories

27  falling under the United States Government's exclusive sovereignty, such as the federally-

28  regulated airspace and federal enclaves.  *See* 29 U.S.C. § 218; 49 U.S.C. § 40103(a); *Taylor v.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

1   *Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 478 (2000).

2          Second, this Court *denied* Plaintiffs' motion for partial summary judgment, including as to

3   their overtime claim.  *Booher v. JetBlue Airways Corp.*, 2016 WL 1642929, at *4 (N.D. Cal. Apr.

4   26, 2016).  The Court has neither made a final determination as to Plaintiffs' overtime claim nor

5   made a finding of fault or liability.  Nonetheless, if the Court's directive to Plaintiffs to submit

6   evidence of more than eight hours worked in California in a day is deemed the "law of the case,"

7   the Court has the "discretion to depart from the law of the case where…an intervening change in

8   the law has occurred."  *U.S. v. Alexander*, 106 F.3d 874 (9th Cir. 1997).  As set forth in JetBlue's

9   opening brief, Judge Orrick's recent *Oman* decision or the *Hirst v. SkyWest Airlines, Inc.* decision

10  post-dated the Court's April 26, 2016 ruling, nor was 49 U.S.C. § 40103(a) or the 1958 Senate

11  Report before this Court at the time of its prior ruling.  Dkt. 63 at 27.  That additional guidance

12  supports that California has no sovereignty over FAs traveling in the skies above it and, thus,

13  California's wage and hour laws, including Section 510, should not follow Plaintiffs as they

14  worked in the federal airspace.[10]  Because there is nothing in Section 510 or IWC Wage Order

15  No. 9 that clearly expresses or reasonably infers any intent to apply extraterritorially as FAs work

16  in the federal airspace and/or in airports in other states, Plaintiffs cannot overcome the

17  presumption against the extraterritorial application of California's overtime laws.

18  **IV.    REQUIRING JETBLUE TO COMPLY WITH SECTION 226 WOULD VIOLATE
19         THE DORMANT COMMERCE CLAUSE.**

20          As is evident from Plaintiffs' own discussion of the existing wage statement laws across

21  the country, while Plaintiffs claim that the laws do not conflict, compliance with one state's law

22  does not ensure compliance nationwide.  Dkts. 60 at 30; 65 at 24.  Plaintiffs also confirm that the

23

24  _____

    [10] The district court's denial of SkyWest's preemption arguments in *Hirst* has no bearing on
25  whether work performed within the federal airspace above a state is considered work performed
    within that state.  That the court held that the Illinois Minimum Wage Law is a generally
26  permissible law not preempted by Congress' regulation of the aviation field, the Airline
    Deregulation Act, or the Railway Labor Act, did not preclude the court from also holding that
27  when FAs seek to apply that law to their time working in the federal airspace it is an improper
    extraterritorial application of the law that would also violate the Dormant Commerce Clause.
28  *Hirst v. SkyWest Airlines, Inc.*, 2016 WL 2986978, at **10, n. 13 (N.D. Ill. May 24, 2016).

1  question of whether legislation may conflict with Section 226 is not theoretical, it is real.  States

2  continue to evolve and expand their wage statement laws, most recently in Oregon to require the

3  date of payment, employer's identification number and the basis by which the employee is paid,

4  to create new requirements that Section 226 does not include.  Dkt. 63 at 25.  As a result, a

5  Section 226-compliant wage statement has not and still does not comply with the requirements of

6  all other states.

7        Plaintiffs also ask the Court to apply the California Labor Code to every day and pay

8  period they worked, including those times when they worked entirely outside of California in

9  other states.  They insist that the cases they cite permit the California Labor Code to have a

10  nationwide reach and give California the power to determine how Plaintiffs should have been

11  treated with respect to their employment in any jurisdiction.  However, unlike in *Huron Portland*

12  *Cement Co. v. City of Detroit, Mich.*, there are competing local regulations here, and local

13  governments do impose differing wage statement requirements.  *Compare Huron Portland*

14  *Cement,* 362 U.S. 440, 448 (1960) ("The record contains nothing to suggest the existence of any

15  such competing or conflicting local regulations.").  Similarly, unlike in *Pacific Merchant*

16  *Shipping Association v. Goldstene*, Plaintiffs are attempting to regulate the wage statements for

17  work performed in other states; arguing that Section 226 governed their wage statements

18  whenever they worked in California during a pay period no matter where else they worked.

19  *Compare Goldstene*, 639 F.3d 1154, 1180 (9th Cir. 2011) (recognizing that the Court was "not

20  currently confronted with a state attempting to regulate conduct in either another state of the

21  union…, in the territory or waters of a foreign nation…, or in the open ocean waters.").

22  Permitting California (or any other state) to regulate conduct occurring entirely outside of the

23  state only because Plaintiffs touched California is an excessive burden imposed on interstate

24  commerce and improper projection of California law into other states.  *Edgar v. MITE Corp.*, 457

25  U.S. 624, 643 (1982) (finding that the Illinois Business Takeover Act violated the Dormant

26  Commerce Clause because, *inter alia*, it purported to give Illinois the ability to regulate tender

27  offers anywhere in the United States); *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1324

28  (9th Cir. 2015) (holding that California's Resale Royalty Act impermissibly regulated wholly out-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

1    of-state conduct because it regulated art sales where the seller resides in California and no other

2    connection to California existed); *Brown-Forman Distillers Corp. v. New York State Liquor*

3    *Auth.*, 476 U.S. 573, 583 (1986).

4          Plaintiffs further argue that their Section 226 rights accrue anew each and every pay

5    period and, thus, ostensibly, at a minimum, they should have received a Section 226-compliant

6    wage statement during those scarce pay periods in which they principally worked in California.

7    This alternative theory only further highlights the Dormant Commerce Clause implications that

8    would result from applying Section 226 to this mobile workforce.  Plaintiffs identify a single pay

9    period for Reid when she only worked in California – February 16 through 28, 2013 – and none

10   for Booher throughout the purportedly extended statute of limitations period.  Dkt. 65 at 13.[11]  A

11   review of Reid's subsequent pay periods demonstrates the impracticality of Plaintiffs' theory.

12   From March 1 through 15, 2013, Reid was on duty for 45.53 hours, including 8.17 hours (17.9

13   percent) in California and at least 10.25 hours in Florida (22.5 percent).  Dkt. 63-9 at 42-43.  In

14   the following pay period, Reid's connections to California further decreased, as Reid was on duty

15   a mere 1.57 hours out of 39.25 total hours (4 percent) in California, as compared to 5.13 hours

16   (13 percent), 4.58 hours (11.7 percent) and 2.57 hours (6.6 percent) in New York, Florida, and

17   Massachusetts, respectively, as well as additional time in Texas.  Dkt. 63-9 at 43-44.  Moreover,

18   half of her workdays that pay period were spent entirely outside of California.  *Id.*  Even if

19   JetBlue was required to provide Reid with a Section 226-compliant wage statement for the

20   February 16 through 28, 2013 pay period because according to Plaintiffs she principally worked

21   within California, the same cannot be said for these subsequent pay periods where she was on

22   duty as much as *96 percent* of her hours *outside* of California.

23         Regardless of whether Plaintiffs seek a single wage statement covering all work

24   performed in a pay period or individual wage statements for each jurisdiction in which Plaintiffs

---

[11] Plaintiffs identify four additional pay periods, none of which fall within the Section 226 statute of limitations period and all of which are for Reid.  Plaintiffs again omit Booher from their analysis.  Nonetheless, Reid did not work solely in California during any of those periods, as they required Reid to work in either:  (a) the federal airspace (May 1 through 15, 2013); or (b) another state, which Plaintiffs either admit (August 1 through 31, 2011; January 16 through 31, 2013) or conveniently ignore (July 16 through 31, 2011).  Dkt. 65 at 13-15; Dkt. 63-9 at 7-9, 40, 46-47.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

worked during a pay period, the resulting burden on JetBlue would be excessive.[12]  *Ward*, 2016 WL 3906077, at *5 (holding that the burden on United to "monitor the pilot's precise hours spent working in each state and determine which state's laws applied in that bid period" along with the confusion resulting from inconsistent wage statement formats on a pay period basis outweighs the local benefits of Section 226); *see also Hirst*, 2016 WL 2986978, at *10 (holding that "tracking the minute-by-minute location of each [Flight Attendant] on each operating SkyWest flight to determine the precise moment she enters and exits [Illinois] airspace" would impose a substantial burden on interstate commerce).

## V.    APPLYING THE CALIFORNIA LABOR CODE'S DAILY OVERTIME REQUIREMENTS TO FA'S PLACES AN UNDUE BURDEN ON JETBLUE.

In *Sullivan II*, the Ninth Circuit recognized that a statute "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 662 F.3d at 1271.[13]  Plaintiffs claim there is no burden here, because "JetBlue can identify four-legged California duty periods through its own records." Dkt. 65 at 23.  That argument ignores that the existence of such a duty period, even if it requires more than eight hours in a day, does not automatically trigger Section 510, because FAs must still work more than eight hours *in*

---

[12] Plaintiffs' proposal that JetBlue can simply have FAs "punch time clocks on their inflight tablets during their shifts" only increases the burden and would interfere with the FAs' performance of their inflight duties. Dkt. 65 at 23, n. 12. JetBlue would have to implement a mechanism through which FAs are notified of the exact time at which they cross over a state's territorial boundaries so that they can stop performing their duties and record that time.

[13] While the Ninth Circuit failed to perform the required analysis in *Sullivan II*, nothing in that decision nor its decision in *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070 (9th Cir. 2013), created the test Plaintiffs seek to impose here – that there must be conflicting overtime law for Section 510 to violate the Dormant Commerce Clause. Dkt. 65 at 24.  Nor is the Ninth Circuit's analysis in *Corey* applicable here.  There, the plaintiffs-appellees contended that California's Low Carbon Fuel Standard violated the Dormant Commerce Clause and was preempted by the Clean Air Act. 730 F.3d at 1077.  While the Clean Air Act expressly prohibited state regulation of emissions from motor vehicles, it explicitly exempted California from that prohibition and Congress encouraged California to "act as a kind of laboratory for innovation." *Id.* at 1078-79 (citing *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.3d 1095, 1111 (D.C. Cir. 1979).  There is no such exemption here permitting California to apply its overtime laws extraterritorially to work performed outside its territorial boundaries.  Indeed, the Court recognized in *Corey* that California "cannot peacefully impose its own regulatory standards on another jurisdiction." *Id.* at 1104.

*California* to receive daily overtime.  While the FAA requires JetBlue to maintain certain data and JetBlue tracks the amount of FAs are on duty, it does not track the amount of time FAs spend working on the ground in California (or in any other state) in its normal course of business. Accordingly, to determine here whether Plaintiffs actually worked more than eight hours *in California* on the days Plaintiffs identified, which they did not, JetBlue was required to retain a statistical expert to synthesize the various datasets, including Plaintiffs' report, taxi, and deplaning times, as well as the wheels-off and wheels-on times for each flight they worked.  *See* Dkt. 63-20.  Dr. Estevez's ability to perform this analysis, however, does not eliminate the excessive burden of having to monitor each FA's precise hours worked and the location thereof to determine when and how each state's laws applies.  *See Ward* 2016 WL 3906077, at \*5-6.

This burden increases substantially when considering the far-reaching implications of Plaintiffs' contentions.  While Plaintiffs assert that they are not seeking to recover for days in which they worked flights that flew above California without landing in the state, no amount of artful pleading can avoid the reality of Plaintiffs' demand.  But Plaintiffs are not "bas[ing] their overtime claims on 'entire days' worked in California."  Dkt. 65 at 23 (citing *Sullivan I*, 51 Cal. 4th at 1200).  Rather, for every single day that Plaintiffs claim they are owed overtime pay, they only worked more than eight hours in California if this Court finds that time working in the federal airspace above California is the equivalent of time working in California.  If that is the law, it applies whether or not a flight departs from or arrives at a California-based airport.  The second the airplane travels above California's territorial boundary, under Plaintiffs' theory the FA is working in California and must be treated as a California employee for the entirety of his or her pay period.  As a result, JetBlue would not only need to track the amount of time in the air in each state, but also the exact location of each flight throughout its route, to determine whether and when California (and any other state) law would apply.  *Hirst*, 2016 WL 2986978, at \*10; *Ward*, 2016 WL 3906077, at \*5.  The undue burden imposed by such requirements precludes applying Section 510's pay requirements to Plaintiffs.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

1   **VI.    JETBLUE'S WAGE STATEMENTS ACCURATELY REFLECTED JETBLUE'S**
2   **CALIFORNIA-COMPLIANT COMPENSATION SYSTEM.**

3           In an effort to re-litigate their previously adjudicated and dismissed minimum wage claim,

4   Plaintiffs again rely on mischaracterizations and purported contradictions.  For the fourth brief in

5   a row, Plaintiffs claim that JetBlue paid them $0 for certain hours of work and now allege that

6   their wage statements failed to include these fictitious payments.  However, this Court already

7   found that JetBlue's compensation formulas "expressly consider[ed] all hours worked in the first

8   instance" and ensured "that Plaintiffs [were] paid for all hours worked."  *Booher*, 2016 WL

9   1642929, at *3.

10          There is nothing contradictory between JetBlue's positions (a) that its credit-based

11  compensation system ensures Plaintiffs were paid well above the minimum wage for each hour

12  worked in compliance with California law, and (b) that system is not an *hourly* system in which

13  Plaintiffs are paid a set hourly rate for each hour worked.  That JetBlue's credit-based system

14  permits Plaintiffs (and the Court) to determine that Plaintiffs earned well-above the minimum

15  wage for each hour worked does not mean that JetBlue's system is thus an hourly system.

16  Indeed, as this Court previously recognized, "JetBlue pays its flight attendants according to one

17  of the four formulas for all time on duty," and it does not use a set hourly wage for every task

18  FAs perform.  *Booher*, 2016 WL 1642929, at *2; *see also Oman v. Delta Air Lines, Inc.*, 153 F.

19  Supp. 3d 1094, 1095 (N.D. Cal. 2015).  Notwithstanding this credit-based system, through the

20  information JetBlue provided, Plaintiffs "can easily calculate their rate of pay for the mix of

21  responsibilities they would have during [each] Rotation."  *Booher*, 2016 WL 1642929, at *3.

22          JetBlue accurately reported Plaintiffs' earnings under this credit-based system in good

23  faith on each wage statement.  Plaintiffs do not dispute that they received wage statements at the

24  time of each payment of wages or that those wage statements accurately listed each form of

25  compensation with which they were credited and the pay rate associated with each in accordance

26  with JetBlue's California-compliant compensation system.  Nor do they dispute that they could

27  not "easily calculate their rate of pay" from the information available to them through the wage

28  statements and JetBlue's Rainmaker system.  Rather, years after their employment ended, they

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

1  contend that JetBlue technically violated the law because it did not transcribe Plaintiffs' credits

2  into an hourly equivalent even though that hourly equivalent would not accurately reflect the

3  manner in which JetBlue paid Plaintiffs.

4  **VII.  PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY WERE WORKING
       THROUGHOUT THE TIME THEY WERE CONSIDERED ON DUTY.**

5

6        In addition to assuming that time worked in the federal airspace over California should be

7  included as time worked in California, Plaintiffs mistakenly assume that their time on duty

8  pursuant to the FAA's regulations is the equivalent of hours worked under California law.  For

9  purposes of determining when FAs are permitted to work and when they are required to rest, the

10  FAA mandates that all time between report to release, including Turn time, be treated as "on

11  duty" time, regardless of whether the FAs are actually performing work throughout that period.

12  14 C.F.R. § 121.467(a).  Accordingly, JetBlue was required to count all of Plaintiffs' time during

13  a Duty Period (not a Rotation, which includes layover time) as duty time.

14        However, as Plaintiffs admitted, they were not always working while "on duty."  On

15  Turns exceeding one hour, Plaintiffs did not have any job duties and generally were free to do

16  whatever they wanted, such as eat, shop or watch a movie.  Dkt. 63 at 11-12.  That Plaintiffs

17  could not watch a "vulgar" movie while they were "killing time" (Dkt. 63-3 at 29) does not

18  convert otherwise non-working hours into working hours.  Nor does the FAA's prohibition of an

19  FA performing any duties within eight hours of using alcohol.  14 C.F.R. § 120.37(d)(1).

20        JetBlue has produced all of the necessary records to allow Plaintiffs to determine when

21  they were "on duty," when they were working inflight, and their time before, after, and between

22  flights.  Moreover, JetBlue produced available flight path records matching prior testimony that

23  certain intra-California flight routes primarily flew over the Pacific Ocean.  Dkt. 63 at 31.

24  Plaintiffs do not contend that any of these records are "incomplete" or "inaccurate."  As a result,

25  it is their burden to prove that they have in fact worked more than eight hours in a day in

26  California without receiving proper compensation.  *Anderson v. Mt. Clemens Pottery Co.*, 328

27  U.S. 680, 687 (1946).  Because Plaintiffs have not done so, their Section 510 claim should be

28  dismissed.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW

## VIII. PLAINTIFFS' WAITING TIME PENALTIES, UNFAIR COMPETITION LAW AND PAGA CLAIMS LACK MERIT.

Plaintiffs' argument that "JetBlue did not enter any evidence or provide any argument that its violations were not willful" and thus "has waived any independent basis for opposing Plaintiffs' waiting time claim," relies on a Ninth Circuit decision regarding what a party may raise on appeal[14] and disregards arguments in JetBlue's opening brief.  As set forth again above, JetBlue has complied with Section 226 in good faith by providing Plaintiffs with wage statements that accurately reflected the manner in which they were paid in accordance with JetBlue's California-compliant FA compensation system.  Moreover, because time spent working in the federal airspace does not qualify as California work time for Section 510 purposes, there was not a single instance during Plaintiffs' employment when they worked more than eight hours in a day in California.  Accordingly, JetBlue should not be found to have willfully failed to pay all wages due.

Further, because Plaintiffs' underlying wage statement and overtime claims fail, Plaintiffs' Third, Fifth and Sixth claims, under California Labor Code sections 201-203, California's Business & Professions Code sections 17200 *et seq.*, and PAGA – the latter two of which Plaintiffs do not even address in their reply – must fail as well.

## IX. CONCLUSION

For all the reasons set forth in JetBlue's initial moving papers and this Reply, JetBlue's cross-motion should be granted, Plaintiffs' cross-motion should be denied, and Plaintiffs' remaining claims should be dismissed with prejudice.

Dated:  April 14, 2017                          MORGAN, LEWIS & BOCKIUS LLP


                                                By  */s/ Daryl S. Landy*
                                                   Daryl S. Landy, Brendan T. Killeen and
                                                   Anna Kim
                                                   Attorneys for Defendant
                                                   JETBLUE AIRWAYS CORPORATION

---

[14] The decision in *Abogados v. AT&T, Inc.* found that a party cannot raise an argument *on appeal* that it did not raise at the district court level.  223 F.3d 932, 937 (9th Cir. 2000).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

JETBLUE'S REPLY
CASE NO. 4:15-CV-01203-JSW