UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BOOHER and PATRICIA REID, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>JETBLUE AIRWAYS CORP.,<br><br>Defendant. | Case No. 15-cv-01203-JSW<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 60, 63 |

Now before the Court is the motion for partial summary judgment filed by Plaintiffs Christopher Booher and Patricia Reid, on behalf of a putative class ("Plaintiffs") and the cross-motion for partial summary judgment filed by Defendant JetBlue Airways Corp. ("JetBlue"). Having carefully reviewed the parties' papers and considered their arguments and the relevant authority, the Court hereby GRANTS IN PART and DENIES IN PART both parties' motions.

**BACKGROUND**

Plaintiff Booher was a flight attendant for JetBlue from 2003 through October 2012. (*See* Second Amended Complaint ("SAC") ¶ 5.) Plaintiff Reid was a flight attendant for JetBlue from 2011 through August 2015. (*Id.* ¶ 7.) JetBlue provides air transportation and operates flights throughout the country, including from multiple airports in California, including San Francisco International Airport, Los Angeles International Airport, Oakland International Airport, Burbank Bob Hope Airport, Long Beach Airport, and San Diego International. (*Id.* ¶ 9.) Plaintiffs contend that JetBlue paid its flight attendants as hourly employees at hourly rates based on seniority. (*Id.* ¶¶ 13–14.) JetBlue currently employs approximately 3,692 flight attendants based in the United States. (*See* Declaration of Julia Garcia ("Garcia Decl.") ¶ 2.)

1	Every month JetBlue's flight attendants receive an information packet ("Bid Packet") that
2	provides a listing of all available flight pairings ("Pairings"), a pre-planned sequence of flights that
3	may consist of one or more flight segments or one or more on duty times in which attendants are
4	not in flight. (*See* Declaration of Steven Killeen ("Killeen Decl.") ¶¶ 2–3, Ex. A at 118:12-20, Ex.
5	B at 133:9–134:2.) Once they have reviewed the Bid Packets, flight attendants submit their
6	preferences for specific Pairings as a bid from which their monthly schedule is generated. Flight
7	attendants' schedules fluctuate and depend upon their preferences and the seniority-based bid
8	system. (Garcia Decl. ¶ 3.)

9	Generally, a flight attendant reports to the airport at a designated report time to begin the
10	Pairing, typically one hour before the first flight time. (Killeen Decl. Ex. C at 34:17–35:7.)
11	Following a short briefing with the rest of the crew, the flight attendant reports to the departure
12	gate in advance of passenger boarding. (*Id.* at 42:6–15.) Then the crew performs its duties to
13	ensure that the cabin is ready to receive passengers and assists with the boarding process, which
14	usually begins about 35 minutes prior to scheduled departure. (*Id.* at 44:8–45:5.) After
15	passengers have boarded and the pilot has received clearance, the pilot releases the brake and
16	pushes back from the gate (Block Out). (*Id.* at 8:18–21.) Upon arrival at the destination (Block
17	In), the flight attendant assists with deplaning the passengers and may assist with cleaning the
18	aircraft cabin. (*Id.* at 52:1–53:24.) The Duty Period ends fifteen minutes after the Block In
19	associated with the last flight segment. (*Id.* at 58:22–59:1.)

20	For Duty Periods with multiple flight segments, there is time between one segment's
21	arrival and the next segment's departure time, referred to as "Turn" or "Ground" time. (*Id.* at
22	27:13–28:7.) During the Turn time, flight attendants are generally free to attend their own
23	activities without job duties, but must report to the next gate 45 minutes before departure time.
24	(*Id.* at 54:4–10, 61:8–14.) JetBlue considers Turn time to be duty time for compensation purposes.
25	(*Id.* at 55:18–56:1.) However, if the flight attendant's Duty Period ends in a destination other than
26	home, the attendant is released from work for a Layover, rest time which is not considered duty
27	time. (*Id.* at 29:8–10.)

28	Although Duty Periods include both work done in-flight and on the ground, Plaintiffs

allege that JetBlue pays only the hourly rates for time actually in the air. Plaintiffs thus brought their first claim for relief seeking unpaid wages for time at California airports. This Court previously addressed Plaintiffs' arguments and granted JetBlue's cross-motion for partial summary judgment on that claim. *Booher v. JetBlue Airways Corp.*, C-15-012303 JSW, 2016 WL 1642929, at *2–3 (N.D. Cal. 2016). The Court found Plaintiffs are paid for all hours worked, based on the minimum guarantee in the Bid Packet and considering all hours actually worked. *Id.* at *3.

Plaintiffs now move for partial summary judgment on their remaining claims: (1) failure to pay overtime wages in violation of California Labor Code sections 510 and 1194; (2) wage time penalties in violation of California Labor Code section 201, 202, and 203; (3) failure to provide itemized wage statements in violation of California Labor Code section 226; (4) civil penalties pursuant to California's Private Attorneys General Action of 2004 ("PAGA"), California Labor Code section 2698; and (5) violations of California Unfair Competition law ("UCL"), California Business and Professions Code section 17200, *et seq.* JetBlue opposes and cross-moves for partial summary judgment on the same claims.

The Court shall address specific, additional facts, as necessary, in the remainder of this order.

## ANALYSIS

**A.  Legal Standard on Motion for Summary Judgment.**

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514

1   F.3d 878, 884-85 (9th Cir. 2008).

2       The party moving for summary judgment bears the initial burden of identifying those
3   portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue
4   of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is
5   "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-
6   moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material"
7   if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment
8   does not have the ultimate burden of persuasion at trial, that party must produce evidence which
9   either negates an essential element of the non-moving party's claims or that party must show that
10  the non-moving party does not have enough evidence of an essential element to carry its ultimate
11  burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102
12  (9th Cir. 2000).

13      Once the moving party meets its initial burden, the non-moving party must "identify with
14  reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91
15  F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th
16  Cir. 1995)). It is not the Court's task "to scour the record in search of a genuine issue of triable
17  fact." *Id.*; *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but
18  it may consider other materials in the record."). If the non-moving party fails to point to evidence
19  precluding summary judgment, the moving party is entitled to judgment as a matter of law.
20  *Celotex*, 477 U.S. at 323.

21  **B.  The Overtime Claim.**

22      Under California law, employers must pay a minimum rate of 1.5 times the regular rate of
23  pay for all work in excess of eight hours in one workday. *See* Cal. Lab. Code §§ 510, 1194.
24  Plaintiffs allege that they were inadequately compensated for duty periods in which they worked
25  more than eight hours in California, including time spent on intra-California flights.

26      California overtime laws "speak broadly," and "apply by their terms to all employment in
27  the state." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1197 (2011) ("*Sullivan I*"). The California
28  Supreme Court has held that even visiting, nonresident employees may claim overtime for "*entire*

4

1  *days and weeks* worked in California." *Sullivan I*, 51 Cal. 4th at 1199–1200; *see also Tidewater*
2  *Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 578 (1996). The *Sullivan I* court relied on the
3  relevant statutory language and legislative history to conclude that California has "expressed a
4  strong interest in governing overtime compensation for work performed in California." *Sullivan I*,
5  51 Cal. 4th at 1197–1201. This Court finds, therefore, that California overtime laws apply to
6  Plaintiffs with respect to *entire* days worked in California.

It is undisputed that Plaintiffs rely on in-flight time, in addition to on-the-ground hours, to qualify for overtime pay. (*See* Pl. Motion at 10:15–16, Exs. 11–17.) The issue before the Court is whether hours spent flying between California airports should be considered hours "worked in California." JetBlue argues that they should not, because: (1) California labor laws are preempted by federal laws regulating air travel; (2) Plaintiffs' intra-California flights included time spent flying over federal enclaves or waters; and (3) requiring JetBlue to comply with California's overtime laws would violate the Dormant Commerce Clause. The Court shall address each argument in turn.

**1.     Federal Preemption.**

The Court rejects JetBlue's argument that California labor laws cannot apply to flight attendants during air travel. The Court finds the reasoning in *Bernstein v. Virgin Am., Inc.* persuasive. 227 F. Supp. 3d 1049, 1076–77 (N.D. Cal. 2017). Like in *Bernstein*, JetBlue cites the Federal Aviation Act ("FAA") section 40103, which states that the "United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). This Court agrees that, "[a]lthough the federal government has exclusive sovereignty over the United States airspace and aviation safety, 'Congress has not occupied the field of employment law in the aviation context and . . . the FAA does not confer upon the agency the exclusive power to regulate all employment matters involving airmen.'" *Id.* at 1076 (quoting *Ventress v. Japan Airlines*, 747 F.3d 716, 722 (9th Cir. 2014)).

JetBlue provides two conflicting authorities—a footnote in a case from the Northern District of Illinois, *Hirst v. Skywest, Inc.*, No. 15 C-02036, 2016 WL 2986978, at *10, n.14 (N.D. Ill. May 24, 2016), and dicta from a case in this District, *Oman v. Delta Air Lines, Inc.*, 230 F.

Supp. 3d 986, 991 (N.D. Cal. 2017). In *Hirst*, the court noted that "it might be argued that the [Illinois Minimum Wage Law] does not apply to any portion of the time [flight attendants] spend in flight over the state of Illinois because that airspace is not within the state's sovereignty." 2016 WL 2986978, at *10, n.14. In *Oman*, the court assumed that only work on the ground, as opposed to work that "occurred in federal airspace governed by federal regulations," was work in California for the purposes of establishing wages earned under California law. 230 F. Supp. 3d at 991. Nther court provided any explanation to support its reasoning. This Court, therefore, finds both *Hirst* and *Oman* less persuasive than *Bernstein*. *See Bernstein*, 227 F. Supp. 3d at 1076–77 (also finding *Hirst* unpersuasive).

JetBlue's final argument relies on a Senate Report, which indicates that the airline industry "is unique among transportation industries in its relation to the federal government—it is the only one whose operations are conducted almost wholly within federal jurisdiction." (*See* Request for Judicial Notice ("RJN"), Ex. B, S. Rept. 1811, 85th Cong., 2d Sess., at 5 (1958).) Again, the Court is not convinced that just because Congress has exclusive sovereignty over the United States airspace, means that it occupies the entire field of employment law in the aviation context. *See Ventress*, 747 F.3d at 722. Moreover, the quoted Senate Report merely states that the airline industry is "conducted *almost* wholly within federal jurisdiction," which leaves room for the application of state labor laws. (*See* RJN, Ex. B, S. Rept. 1811, 85th Cong., 2d Sess., at 5 (1958).)

### 2. *Mt. Clemens* Burden Shifting.

Based on JetBlue's flight records, Plaintiffs allege that they worked a total of 32 days in which they flew only intra-California flights and worked Duty Periods lasting over eight hours.[1] (*See* Pl. Motion Exs. 11–17.) The records show the time and location of arrivals and departures,

---

[1] JetBlue argues that Plaintiffs improperly include Turn time, because aside from one hour of required duties (15 minutes after Block In and 45 minutes prior to departure time), the flight attendants were generally available for their own activities during Turns. (*See* Killeen Decl. Ex. C at 54:4–10, 61:8–14.) The Court is not persuaded by this argument, given that JetBlue considers Turn time to be duty time for compensation purposes. (*See id.* at 55:18–56:1.) Moreover, even if all Turns over one hour are treated as one hour of compensable work, Plaintiffs still worked over eight hour Duty Periods on 31 of their 32 alleged overtime days. (*See* Declaration of Valentin Estevez ("Estevez Decl.") Ex. A at 12.)

6

as well as the total work time, but do not include in-flight geographic data. (*See id.*) Thus, JetBlue argues that Plaintiffs have failed to show the time spent flying between California airports actually occurred within the airspace above California, rather than the airspace above federal enclaves or waters. *See Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 478 (2000) ("A federal enclave is land over which the federal government exercises legislative jurisdiction."). Plaintiffs contend that pursuant to the Supreme Court decision in *Anderson v. Mt. Clemens Pottery Co.*, they should not be barred from recovery by JetBlue's failure to keep more detailed records. 328 U.S. 680 (1946).

In *Mt. Clemens*, the Supreme Court established a burden-shifting test to be applied when an employee is unable to prove the precise extent of uncompensated work due to the employer's "inaccurate or inadequate" records.

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687–88. The Court reasoned that an employee should not be penalized for an employer's poor record-keeping, as that "would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." *Id.*

Here, Plaintiffs allege that they have met their initial burden by showing 32 days in which they worked over eight hours in and between California airports, as indicated by JetBlue's records. (*See* Pl. Motion Exs. 11–17.) JetBlue asserts that its records are neither inaccurate nor inadequate, because they identified the amount of time Plaintiffs were on duty. Without further explanation, JetBlue argues that the records thus "allowed Plaintiffs to determine when they were working

7

within California." (*See* Def. Cross-Motion at 24:2–17.) It is not clear to the Court how the records, without flight path data, would allow Plaintiffs to more precisely prove the hours in which they were working within California. Instead, the Court finds the records provide a just and reasonable inference that Plaintiffs did work full days within California in which they were eligible for overtime compensation under California law.

Because neither party is able to provide evidence of the precise amount of work performed—actual flights paths with contemporaneous time stamps—the burden shifts to JetBlue to negative the reasonableness of Plaintiffs' theory. JetBlue provides two examples of flight paths that primarily travel over the Pacific Ocean, from San Francisco to Long Beach and from Oakland to Long Beach. (*See* Declaration of Imran Rahman ("Rahman Decl.") Exs. A, B.) Both examples were scheduled for flights in 2016, and were only one of many possible routes between the destinations. (*Id.* ¶ 11.) JetBlue alleges that, between September 1, 2016 and December 31, 2016, 454 of 475 flights from San Francisco to Long Beach, and 366 of 546 flights from Oakland to Long Beach, were scheduled to fly the example routes, respectively. (*Id.*) However, JetBlue also states that these scheduled flights "take various routes depending on weather conditions, air traffic, and other variables," and "may also take an inland route." (*Id.* ¶ 5.)

JetBlue does not provide any information regarding Plaintiff's scheduled flight paths, actual flights paths, or JetBlue's standard routes during the relevant time period. Moreover, JetBlue's two examples fail to account for the fact that during the 32 alleged overtime days, Plaintiffs also flew to and from Sacramento, and in both the north and south directions. (*See id.* ¶ 5; *see also* Pl. Motion Exs. 11–17.) Therefore, the Court finds that JetBlue has failed to negative the reasonableness of Plaintiffs' theory. JetBlue's two example flight paths are insufficient to show it is unreasonable that at least one of Plaintiffs' thirty-two alleged overtime days consisted of intra-California flight routes within the state's borders. Accordingly, the Court finds Plaintiffs are entitled to damages on their overtime claim.

  **3.**  **The Dormant Commerce Clause.**

The Dormant Commerce Clause "ensures that state autonomy over 'local needs' does not inhibit 'the overriding requirement of freedom for the national commerce.'" *Sam Francis Found.*

8

*v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (quoting *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)). "If a statute 'regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) ("*Sullivan II*") (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

JetBlue argues that applying California's overtime law to flight attendants places an undue burden on JetBlue, in violation of the Dormant Commerce Clause. This argument is clearly precluded by Ninth Circuit law. In the context of overtime compensation, the court found that "California applies its Labor Code equally to work performed in California, whether that work is performed by California residents or by out-of-state residents. There is no plausible Dormant Commerce Clause argument when California has chosen to treat out-of-state residents equally with its own." *Sullivan II*, 662 F.3d at 1271. JetBlue asserts that *Sullivan II* does not apply, because Plaintiffs failed to show that they worked in California for over eight hours in a single workday. As discussed, the Court finds, by including flight time between California airports, Plaintiffs have met their burden to demonstrate they worked full days in California such that they were eligible for overtime pay.

Accordingly, the Court GRANTS Plaintiffs' and DENIES JetBlue's motions with respect to Plaintiffs' second claim for relief.

**C.     Waiting Time Penalties.**

Plaintiffs also allege that they are entitled to waiting time penalties under California Labor Code section 203. Cal. Lab. Code § 203(a). Section 203 states that if "an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits," the employee's wages continue as a penalty for not more than 30 days. *Id.* The term "willful" does not require "a deliberate evil purpose to defraud," but "merely means that the employer intentionally failed or refused to perform an act *which was required to be done*." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005).

Plaintiffs argue that JetBlue willfully failed to pay overtime as required by California law,

1  because its records show Plaintiffs were eligible for overtime, but its payment structure does not

2  provide overtime pay. (*See* Motion Exs. 10–17.) As discussed, the Court found JetBlue's records

3  do support Plaintiff's allegation that they worked full days in California such that they were

4  eligible for overtime pay. JetBlue does not dispute that overtime is not part of its payment

5  structure. (*See* Motion Ex. 10 at JB002193; Pl. Reply at 6:13–27.) Further, JetBlue provides no

6  alternative theory to explain why it should not be liable for waiting time penalties.

7  Accordingly, the Court GRANTS Plaintiffs' and DENIES JetBlue's motions with respect

8  to Plaintiffs' third claim for relief.

### D. The Wage Statement Claim.

California Labor Code section 226 provides, in relevant part, that "[a]n employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee . . . an accurate itemized statement in writing showing . . . total hours worked by the employee . . . [and] all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a). Plaintiffs allege that JetBlue's wage statements failed to meet Section 226 requirements, because the statements only listed hours and hourly rates for in-flight time, despite Plaintiffs' significant on-the-ground duties. JetBlue argues that Section 226 does not apply to Plaintiffs, because they principally worked outside of California during the relevant time periods.[2]

Several courts in this District have already addressed whether Section 226 applies to airline employees whom work a portion of their hours in California. In *Ward v. United Airlines, Inc.*, the court held that Section 226 is subject to the "job situs" test, which limits the statute's application to employees whom work principally in California. No. C 15-02309 WHA, 2016 WL 3906077, at *3–5 (N.D. Cal. July 19, 2016) (Alsup, J.). The court reasoned that finding otherwise would

---

[2] The California Supreme Court has yet to establish a clear rule regarding claims under Section 226. *Sullivan I* explicitly limited its holding to overtime compensation for work performed in California. The Court provided that "California's interest in the content of an out-of-state business's pay stubs, . . . for example, may or may not be sufficient to justify choosing California law over the conflicting law of the employer's home state. No such question is before us." *Sullivan I*, 51 Cal. 4th at 1201.

10

constitute extraterritorial application of California wage-and-hour laws. *Id.* at *3. The court further rejected plaintiffs' argument that Section 226 governs wage statements issued to employees residing in California regardless of where their work occurred, because it would yield "absurd results" by forcing out-of-state employers to comply with the laws of each state of residence of its employees, and depriving in-state wage earners of protection solely based on out-of-state residence. *Id.* at *4.

In *Bernstein v. Virgin Am., Inc.*, the court rejected *Ward*'s job situs test as dispositive. 227 F. Supp. 3d 1049, 1059–61, 1066 (N.D. Cal. 2017) (Tigar, J.). Instead, the *Bernstein* court opted for a multi-factored approach.[3] *Id.* Pursuant to *Tidewater* and *Sullivan I*, the court found relevant factors include whether: (1) the employee resides in California; (2) the employee receives pay in California; (3) the employee has exclusive or principal job situs in California; (4) the employer resides in California; and (5) the employee's absence from California was temporary in nature. *Bernstein*, 227 F. Supp. 3d at 1059–60. The court explained that, under *Tidewater*, while an employee who meets the first three factors "*presumptively* enjoys the protections of California wage orders," an employee does not *need* to meet all three factors, including job situs, to be protected by California law. *Id.* at 1059 (emphasis added). Applying the *Tidewater/Sullivan I* factors, the court found the parties had "deep ties" to California—plaintiffs were California residents, Virgin was based and headquartered in California, and 88–99% of Virgin's daily flights either departed from, or arrived in, California airports. *Id.* at 1060. Although plaintiffs spent only about 25% of their total work time in California, which may have been insufficient to pass the job situs test, the court found the "other compelling considerations" allowed plaintiffs to bring their Section 226 claims. *Id.* at 1060–61.

Here, this Court finds Section 226 does not apply, either under *Ward*'s job situs test or

---

[3] The court in *Oman* also supported *Bernstein*'s multi-factor approach, but ultimately based its holding on a narrower *de minimis* analysis. 230 F. Supp. at 993–94 (Orrick, J.). The court distinguished the case from *Ward* and *Bernstein* by focusing on whether a *de minimis* amount of work in California *alone* was sufficient to apply California law, without regard for other factors such as "the Flight Attendants' residence, an employer's California residence or other 'deep ties' to California, or the performance of a significant amount of work in a particular pay period in California." *Id.*

11

*Bernstein*'s multi-factor test. Like in *Ward*, Plaintiffs worked primarily outside of California, spending 25.4% and 16.8% of their hours working in California, and 80.4% and 90% of their workdays with some work at non-California airports. (*See* Estevez Decl. Ex. A at 5.) Further, even if *Ward* is legal error, as Plaintiffs assert, the facts of this case are clearly distinguishable from those in *Bernstein*. Unlike Virgin, which was headquartered in California, JetBlue is headquartered in New York. (*See* Declaration of Julia Garcia ("Garcia Decl.") ¶ 2.) JetBlue's Dispatch, Crew Scheduling, Crew Services, Inflight Standards, Payroll, Compensation, Human Resources, and Legal departments are all located in New York. (*See id.* ¶ 3.) Only 7.3% of JetBlue's daily flights depart from, or arrive at, California airports, as compared to 88–99% of Virgin's daily flights. (*See* Rahman Decl. ¶ 8.) Moreover, JetBlue's flight attendants receive initial training, and typically annual training, in JetBlue's Florida Support Center. (*See* Garcia Decl. ¶ 6–7.) Thus, it is clear that the parties lack the same "deep ties" to California as found in *Bernstein*. *See Bernstein*, 227 F. Supp. 3d at 1060–61; *see also Vidrio v. United Airlines, Inc.*, No. CV15-7985 PSG (MRWx), 2017 WL 1034200, at *5 (C.D. Cal. Mar. 15, 2017) (finding Section 226 did not apply under the *Bernstein* test, because United lacked "deep ties" to California, as it was not headquartered in California, only 18.34% of its domestic flights operated out of California airports, and its California-based flight attendants begin and end comparatively few shifts in California, and some do not work in California at all).

Accordingly, the Court GRANTS JetBlue's, and DENIES Plaintiffs', motion with respect to Plaintiffs' fourth claim for relief.

**E.    The PAGA and UCL Claims.**

Plaintiffs also bring derivative claims under the PAGA, Cal. Lab. Code § 2698, and the UCL, Cal. Bus. & Profs. Code § 17200, *et seq.*, based on their underlying overtime and improper wage statement claims. For the same reasons already discussed, the Court finds Plaintiffs' PAGA and UCL claims prevail as they relate to the overtime claim, and fail as they relate to the wage statements claim.

Accordingly, with respect to Plaintiffs' fifth and sixth claims, the Court GRANTS Plaintiffs' and DENIES JetBlue's motions as they relate to the overtime claim. The Court

12

1   GRANTS JetBlue's and DENIES Plaintiffs' motions as they relate to the wage statements claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the parties' motions for partial summary judgment.  At this time, the Court only addresses the claims with respect to liability.  To the extent that Plaintiffs show damages for their overtime and waiting time penalty claims, the Court is inclined to grant Plaintiffs' calculated awards, but will provide Defendants an opportunity to respond.  Accordingly, the Court requests that the parties meet and confer to determine a schedule to brief the issue of damages, as well as any other remaining issues to bring this case to resolution.

**IT IS SO ORDERED.**

Dated: December 12, 2017

_____
JEFFREY S. WHITE
United States District Judge